599 S.E.2d 456

**David A. HORTON, Appellant,**

v.

**DARBY ELECTRIC COMPANY, INC., Respondent.**

No. 25839.

Supreme Court of South Carolina.

Heard April 8, 2004.

Decided July 6, 2004.

---

10. It is unclear from the record whether any of appellants are licensed premises within the meaning of § 61–4–580.

W. Andrew Arnold, of Arnold & Arnold, of Greenville, for appellant.

D. Randle Moody, II, of Roe Cassidy Coates & Price, and Ellison F. McCoy, of Haynsworth Baldwin Johnson & Greaves LLC, both of Greenville, for respondent.

Eric Schweitzer, of Ogletree, Deakins, Nash, Smoak, & Stewart, PC, of Columbia, for Amicus Curiae South Carolina Chamber of Commerce.

Chief Justice TOAL:

David Horton (appellant) appeals the trial court's decision granting Darby Electric Company's (respondent's) motion for summary judgment.

## FACTUAL/PROCEDURAL BACKGROUND

Appellant was employed by respondent, which is in the business of the sale and repair of industrial electric motors, from March 1981 to April 2001. Within a month of his hiring, appellant was promoted to shop manager and, at the time of his termination, he held the position of Vice President of Operations. Appellant's job responsibilities included bringing in work and getting work out, maintaining good morale in the shop, hiring and firing employees, and keeping costs under control.

As a result of losing several employees to competitors, respondent drafted a restrictive covenant and non-disclosure agreement (the agreement) in 1990. This agreement provided that the employees who signed the agreement would not compete with respondent, solicit respondent's customers, or utilize or disclose certain proprietary information of respondent for a period of two years following the termination, for any reason, of the employee's employment. Appellant signed this agreement and received a raise in return for signing the agreement.

In April 1992, respondent published a policy and procedure manual. Appellant stated in his deposition that he had read and understood the manual. Steve Darby, president of the company, stated that the manual applied to all of the employees, including appellant, and management was to follow the manual as a guide. Darby stated he used the manual as a guide to terminate appellant. The disciplinary policy in the manual provides:

It is the Company's wish that a uniform policy be followed by its supervisors which will mean:

First—that an employee will have had sufficient notice that a continuance of his improper actions will bring about his discharge, and

Second—that a report in writing is made of all warnings given and disciplinary measures taken.

The following is to be viewed as the guiding policy insofar as taking disciplinary action for infractions of company rules and misconduct is concerned.

1. At first offense, if not in itself serious enough to warrant suspension or discharge, give warning and advise that another offense will result in suspension for 3 days without pay as a disciplinary measure.

2. At second offense, if not in itself serious enough to warrant discharge, give 3 days' suspension without pay and warn that another offense may result in discharge.

3. At third offense, discharge, and point out to employee that he brought the action on himself and left the supervisor without any alternative.

. . .

It should be emphasized again that supervisors are not required to go through the entire three steps involved in this disciplinary procedure. Discipline may begin at any step in the procedure depending on the seriousness of the offense committed. Any discipline administered by a supervisor should be commensurate with the offense committed. In addition, the supervisor may repeat any of the first two steps of this procedure when he feels it is necessary, so long as the discipline is commensurate with the offense committed. If there is any doubt on your part as to what step to begin with, you should consult with the Plant Manager.[1]

Steve Darby testified that, for a non-serious infraction, the employee would be entitled to some form of progressive discipline and that he did not think an employee could be terminated for a non-serious first time offense. However, he said if a supervisor terminated an employee for a non-serious first offense, it would not be a violation of the disciplinary policy because the supervisors had discretion in deciding how to handle their employees. Appellant testified he tried to always use the manual when disciplining employees. However, he confirmed Darby's testimony by stating he had discretion as to what level of discipline to impose on the employees.

Darby stated appellant's offenses were serious enough to terminate him immediately. Darby testified that, in 2000,

---

1. The "Plant Manager" was appellant.

appellant was suspended with pay for three days for using profanity in the workplace. However, he testified appellant treated the suspension as if it was extra vacation.

In January 2001, appellant and Darby had a meeting in which they discussed the company's progress and how appellant could improve his performance. After the meeting, Darby wrote appellant a letter recapping points from the meeting. Darby testified he did not consider this letter a warning, but an understanding regarding appellant's performance. The letter stated, in pertinent part:

> You must eliminate mistakes. This is a constant and recurring problem. Your employees must understand procedures and procedures must be enforced. Thorough planning prevents mistakes. Procedures need to be constantly improved. Clear concise instructions prevent mistakes, which saves time and reduces costs. Doing a job without thinking frequently causes us to have to do it over to get it right. Cleaning parts half way, performing a drop voltage test incorrectly, jumping to conclusions without gathering all of the facts, these are some of the ways we are wasting time. We can change this.

Darby testified appellant was terminated for the following reasons: (1) allowing a motor to be shipped out when the mechanics did not approve the motor;[2] (2) making a frivolous written statement to a client about the cause of the client's motor's failure ("burnt to a crisp");[3] (3) failing to give certain

---

2. The Blue Ridge motor was a five-ton motor that respondent expected to make a profit of about $9,000 on for its repair. An employee, Ron Hunt, set up the machine incorrectly and refused help. Appellant admitted the shop was his responsibility but stated he did not "micromanage his employees." Appellant approved the motor to leave the shop although it did not have a good cosmetic appearance and had not been approved by the mechanics because it was not reaching full voltage. Before approval for shipment, appellant knew the motor was not reaching full voltage and that its appearance was not satisfactory. However, he stated he did not know the mechanics had not approved the motor until after his termination. From the evidence, it appears appellant wished to hasten the repair because he was about to leave for a vacation.

3. Appellant testified the comment was a description of the failure but was probably a "slight of tongue comment" concerning the motor.

work priority as he should have; (4) previous 3–day suspension; (5) previous letter indicating mistakes should not be made; and (6) the way he treated his employees. Darby stated these factors were serious enough to proceed directly to termination.

Following appellant's termination from his position, he filed a complaint against respondent alleging breach of contract and breach of implied covenant of good faith and fair dealing. The trial court granted respondent's summary judgment motion.

Appellant appeals the trial court's decision granting summary judgment and raises the following issues on appeal:

I. Did the trial court err by ruling the restrictive covenant and nondisclosure agreement provides for employment at-will?

II. Did the trial court err by ruling there was not a genuine issue of fact regarding the existence and breach of an implied contract of employment based upon respondent's policy manual?

## LAW/ANALYSIS

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002). In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

### I. Restrictive covenant and nondisclosure agreement

Appellant argues the trial court erred by ruling the restrictive covenant and nondisclosure agreement (the agreement) allowed for the termination of appellant's employment for any reason.

The trial court found this case is not a traditional handbook case given there was an independent agreement governing appellant's employment. The court held respondent was entitled to summary judgment because the agreement specifically

provided appellant could be terminated for any reason and thus, retained his at-will status.

This ruling is in error given the agreement does not provide that appellant can be terminated for any reason. Reading the phrase, "termination, for any reason, of his employment" within the context of the agreement, it is clear the agreement is not stating that appellant's employment can be terminated for any reason.[4] In context, the phrase is simply conveying to the employee that the agreement will be in force regardless of how the employment is terminated.

The trial court also incorrectly interpreted the agreement to be an employment contract that maintained appellant's employment at-will status. The trial court interpreted the agreement too broadly. Nothing in the agreement indicates the agreement is for the purpose of maintaining the status of employment at-will. The agreement is solely concerned with attempting to prevent employees from competing with respondent for two years following their departure from their employment with respondent. This agreement does not answer the question of what type of employment relationship is held between appellant and respondent. Accordingly, the trial court erred by granting summary judgment on this point.[5]

---

4. The text of the agreement states:

Employee therefore agrees that, for a period of two years following the termination, for any reason, of his employment with Employer, Employee will not, either on his own behalf or on behalf of a competing business: (1) solicit business from any ongoing customer of Employer's with whom Employee had contact while employed by Employer, or (2) perform any services similar to the services provided by Employer for any ongoing customer of Employer's with whom Employee had contact while employed by Employer.

. . .

Employee therefore agrees not to cause information from Employer's customer list to become available to a competing business at any time, whether during the continuation of Employee's employment relationship with Employer or following the termination, for any reason, of that employment relationship.... All documents relating to Employer's customers in Employee's possession are to be surrendered to Employer at the termination, for any reason, of Employee's employment or at any other time upon Employer's demand.

5. Appellant further argues the employment at-will doctrine does not apply where the employee has given good consideration in addition to the services rendered. (Citing *Orsini v. Trojan Steel Corp.*, 219 S.C.

## II. Employee handbook

■ The trial court found summary judgment was proper on the basis there was no contract altering appellant's at-will status. The court stated the fact there were two disclaimers in the manual that state nothing in the manual is intended to be construed as a contract of employment required the grant of summary judgment.[6] The trial court found appellant was on actual notice that his employment was at-will because he admitted he read and understood the manual, including the disclaimers. Further, the trial court found the disciplinary procedure was not a mandatory procedure because the discipline meted out was at the discretion of management. The trial court further ruled that even assuming the manual somehow could restrict decisions related to appellant's continued employment, it is clear the contract was not breached. Finally, the trial court granted summary judgment on appellant's breach of the implied covenant of fair dealing claim given appellant's employment was at-will.

---

272, 64 S.E.2d 878 (1951) (employment at-will does not apply where employee has given good consideration in addition to services rendered; held the giving up of a job terminable at-will to take job with employer was not sufficient independent consideration to render contract enforceable)). Appellant states the "good consideration" he gave was his agreement to relinquish his right to compete with respondent after termination.

Appellant's relinquishment of the right to compete with respondent after termination is not "good consideration," such that the agreement changed his employment at-will status. The relinquishment does not have any effect on the duration of appellant's employment and there is nothing in the agreement that can be construed to alter the employment relationship between appellant and respondent.

**6.** The disclaimer in the Purpose section of the manual states:

We must emphasize that **YOUR EMPLOYMENT IS AT THE WILL OF YOU AND THE COMPANY. EITHER MAY TERMINATE THE EMPLOYMENT AT ANY TIME, FOR ANY REASON. NOTHING HEREIN SHALL BE CONSTRUED AS A CONTRACT OF EMPLOYMENT.**

The disclaimer in the Statement on Policies section states:

We emphasize again that **YOUR EMPLOYMENT IS AT WILL. EITHER YOU OR THE COMPANY MAY TERMINATE THE EMPLOYMENT AT ANY TIME, FOR ANY REASON. NOTHING HEREIN IS INTENDED TO BE CONSTRUED AS A CONTRACT OF EMPLOYMENT.**

Appellant argues the trial court erred by granting summary judgment when there were issues of material fact regarding the existence of an employment contract and regarding whether that contract was breached.

 Generally, an employer may terminate an at-will employee for any reason or no reason and will not be subjected to a breach of employment contract claim. *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002). This Court has held that the determination of whether an employee manual alters an employee's at-will status is a question for the jury. *Fleming v. Borden*, 316 S.C. 452, 460, 450 S.E.2d 589, 594 (1994); *Small v. Springs Industries*, 292 S.C. 481, 357 S.E.2d 452 (1987). *See also Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002) (because employee handbook may create contract, issue of existence of employment contract is proper for jury when its existence is questioned and evidence is either conflicting or admits of more than one inference). An employee manual that contains promissory language and a disclaimer is "inherently ambiguous," and a jury should interpret whether the manual creates or alters an existing contractual relationship. *Fleming*, 316 S.C. at 463–464, 450 S.E.2d at 596.

Respondent's manual exemplifies the appropriate manner in which to give employees a guide regarding their employment without altering the at-will employment relationship. The manual contained conspicuous disclaimers and appellant understood those disclaimers. Further, the disciplinary procedure contained permissive language [7] and did not provide for mandatory progressive discipline. Appellant, who himself had the responsibility of interpreting the manual, stated he interpreted the manual as not limiting his ability to terminate employees. Accordingly, the policy manual did not alter the

---

7. The permissive language is as follows: (1) the disciplinary procedure "is to be viewed as the *guiding policy* insofar as taking disciplinary action . . .;" (2) "supervisors are *not required* to go through the entire three steps involved in the disciplinary procedure;" (3) "[d]iscipline *may* begin at any step in the procedure depending on the seriousness of the offense committed;" and (4) "supervisor *may* repeat any of the first two steps of this procedure when he feels it is necessary, so long as the discipline is commensurate with the offense committed." (Emphasis added).

employment at-will relationship between appellant and respondent.[8]

■ Further, even if the manual could be interpreted as setting limitations on respondent's ability to terminate appellant, the evidence is uncontradicted that respondent had a reasonable good faith belief that sufficient cause existed for appellant's termination. *See Conner v. City of Forest Acres,* 348 S.C. 454, 560 S.E.2d 606 (2002) (fact finder must not focus on whether employee actually committed misconduct; instead, focus must be on whether employer had reasonable good faith belief that sufficient cause existed for termination). While it appears the first two steps of the disciplinary policy had been used prior to terminating appellant, appellant's conduct was serious enough to proceed directly to termination.

We note this case is distinguishable from *Conner.* In *Conner,* we found the question remained whether the employer (the City) had a reasonable good faith belief that sufficient cause existed for terminating Conner. In that case, the City terminated Conner, the grievance committee reinstated her, and then the City Council overturned the grievance committee's reinstatement. The Court found that, because reasonable minds could differ as to whether just cause existed to support Conner's termination, the trial court should not have granted summary judgment in favor of the City. The instant case is unlike *Conner* because reasonable minds cannot differ as to whether just cause existed to support appellant's termination and, also, because respondent's employees were not entitled to progressive discipline.

Accordingly, the trial court did not err by granting summary judgment on appellant's contract claims.[9] Therefore, the trial court's decision is **AFFIRMED.**

---

**8.** Although the question has been raised that the manual does not apply to appellant, as respondent's Vice–President of Operations, the manual in fact applies to appellant. The manual does not limit itself to employees who are not supervisors and specifically states in the Purpose section that the manual "is designed to be a working guide for *all* personnel." (Emphasis added).

**9.** Appellant further argues the trial court *sua sponte* ruled on the affirmative defenses of unclean hands and equitable estoppel although respondent had not raised those defenses. *See Ingram v. Kasey's*

WALLER, BURNETT, JJ., and Acting Justice PAULA H. THOMAS, concur. PLEICONES, J., concurring only in the result.

*Assocs.,* 340 S.C. 98, 531 S.E.2d 287 (2000) (doctrine of unclean hands precludes plaintiff from recovering in equity if he acted unfairly in subject matter of litigation to prejudice of defendant; and elements of equitable estoppel as to party estopped are: (1) conduct by party estopped which amounts to false representation or concealment of material facts; (2) intention that such conduct shall be acted upon by other party; and (3) knowledge, actual or constructive, of true facts).

Appellant correctly argues the doctrines of equitable estoppel and unclean hands do not apply in this case. However, appellant incorrectly argues the trial court raised those doctrines *sua sponte.* The trial court's ruling was not based on either of those doctrines.