THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
John Youngblood, Appellant,
v.
QualServe Corporation f/k/a Food Service Holdings, Inc.,
Respondent.
 
 
 

Appeal From Richland County
 Reginald I. Lloyd, Circuit Court Judge

Unpublished Opinion No. 2005-UP-140   
Submitted February 1, 2005  Filed March 1, 2005 

AFFIRMED

 
 
 
William Gary White, III of Columbia, for Appellant.
Mark W. Bakker, J. Theodore Gentry and Alice W.W. Parham, all of Greenville, for Respondent.
 
 
 

PER CURIAM:  John Youngblood appeals the trial courts grant of summary judgment in favor of Qualserve Corporation on his breach of employment contract action.  We affirm.1
FACTS
Qualserve Corporation2 employed John Youngblood as a warehouse supervisor.  Youngblood did not have a written employment contract with Qualserve.  In early 2000, Qualserve published an employee manual.  
On May 9, 2002, Qualserve terminated Youngblood from his position as warehouse supervisor for failure to follow company procedures.  Youngblood then instituted this action, claiming the employee manual created a contract of employment.  Qualserve filed a motion for summary judgment, which the trial court granted.  This appeal followed.  
STANDARD OF REVIEW
In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the non-moving party.  George v. Fabri, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001).  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Baughman v. Am. Tel. and Tel. Co., 306 S.C. 101, 114-15, 410 S.E.2d 537, 545 (1991).  Where a verdict is not reasonably possible under the facts presented, summary judgment is proper.  Bloom v. Ravoira, 339 S.C. 417, 425, 529 S.E.2d 710, 714 (2000).
LAW/ANALYSIS
Youngblood argues the trial court erred in granting Qualserves motion for summary judgment because the language in the employee manual transformed his at-will employment to a contractual employment relationship.  We disagree. 
South Carolina recognizes the doctrine of employment at-will.  Prescott v. Farmers Tel. Coop., Inc., 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999).  At-will employment is generally terminable by either party at any time, for any reason or no reason at all.  Id.  Although some exceptions have been recognized, the doctrine of employment at-will remains in South Carolina as a longstanding economic incentive that provides the marketplace its necessary flexibility.  Id. at 335, 516 S.E.2d at 925.  
Nevertheless, an employer and employee may contractually alter the general rule of employment at-will, thereby restricting the freedom of either party to terminate the employment relationship without incurring liability.  Baril v. Aiken Regional Med. Ctr., 352 S.C. 271, 281, 573 S.E.2d 830, 836 (Ct. App. 2002).  An employee handbook may create such a contract.  Small v. Springs, 292 S.C. 481, 485, 357 S.E.2d 452, 455 (1987).  The court in Small explained, It is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as a gratuitous, nonbinding statement of general policy whenever it works to his disadvantage. Id. 
Although the Small court instructed that an employer may continue at-will employment by inserting a conspicuous disclaimer into the handbook, the supreme court subsequently ruled a disclaimer is merely one factor to consider in ascertaining whether the handbook as a whole conveys credible promises that should be enforced.  Id.; Fleming v. Borden, 316 S.C. 452, 463, 450 S.E.2d 589, 596 (1994).  The entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, an expectation and a benefit.  Fleming, 316 S.C. at 463, 450 S.E.2d at 596.  An employee manual that contains promissory language and a disclaimer is inherently ambiguous and a jury should interpret whether the manual creates or alters an existing contractual relationship.  Horton v. Darby Elec. Co.,360 S.C. 58, 67, 599 S.E.2d 456, 460 (2004).  
The first page of the employee manual contained the following language written in bold capital letters:

The contents of this handbook do not constitute the terms of an employment contract, express or implied, between Food Service Supplies, Inc. (FSSI) and the employee.  The contents of this employee handbook are not all inclusive in that they summarize current company policies and procedures and are intended as guidelines Only.  the company retains the right to change, modify, suspend, interpret or cancel in whole or in part any of the published or unpublished policies or practices of the company, without advance notice, in its sole discretion, and without Having to give cause or justification to any employee.  
Nothing contained in this handbook should be construed as a guarantee of continued employment, but rather, employment with the company is on an at-will basis.  This means that the employment relationship may be terminated at any time by either the employee or the company for any reason not expressly prohibited by law, or for no reason.
Any written or oral statements by a supervisor, corporate officer or other agent of the company that is contrary to the foregoing, or that purports to change, add to, or delete anything in this handbook is invalid and should not be relied upon by any prospective or existing employee unless such a statement and/or agreement is in writing and signed by the president of FSSI.

The Qualserve disclaimer is written in bold, highlighted in all capital letters, and contained in its entirety on the first page of the employee manual provided to Youngblood.  Moreover, Youngblood does not argue the employee manual lacks a disclaimer.  Therefore, the issue to resolve is whether other provisions in the employee manual give rise to a promise, an expectation, and a benefit upon which Youngblood relied and which altered his at-will status.  
Youngblood argues the provisions of the manual, specifically the disciplinary policy contained therein, create sufficient mandatory and promissory language to alter his at-will employment status to a contractual relationship.  Specifically, Youngblood alleges the disciplinary policy contained promises of a progressive disciplinary policy and Qualserve failed to provide him the required warnings before terminating his employment.  

The disciplinary policy provides, in part:
 
The Companys normal practice is to help the employee identify problems and to improve performance and behavior.  The specific disciplinary action will normally be based on an assessment of the offense, the circumstances, and previous record.  The company reserves the right to take whatever disciplinary measures it feels are appropriate, including discharge, if in the judgment of management the employees conduct and/or performance cannot be corrected or it seriously threatens the well being of the Company or other employees, or if other circumstances indicate that termination is appropriate.
 

The manual lists examples of offenses for which an employee will be disciplined, but notes behavior subject to discipline is not limited to the listed acts.  The manual details a progressive discipline procedure that may be used.  However, it cautions:  

The decision of whether to use progressive discipline and what type of discipline to use will be based on the judgment of management. . . .  Some types of conduct or performance may result in immediate termination of employment with no prior discipline. . . .
Any employee who believes they have been treated unfairly with respect to discipline, counseling, or termination of employment should pursue a complaint under the Problem Resolution Plan in the handbook.
Employment with FSSI is at the mutual consent of FSSI and the employee, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

In Conner v. City of Forest Acres, the South Carolina Supreme Court found that an employee manual containing mandatory or promissory language in a disciplinary policy provision may create a contractual employment relationship.  348 S.C. 454, 464, 560 S.E.2d 606, 611 (2002).  Examples of mandatory language from Conner include:  (1) violations of the Code of Conduct will be disciplined, (2) discipline shall be of an increasingly progressive nature, and (3) all employees shall be treated fairly and consistently in all matters related to their employment.  Conner, 348 S.C. at 464 n.4, 560 S.E.2d at 611 n.4.  
In contrast, the supreme court recently held an employers manual exemplified the appropriate manner in which to give employees a guide regarding their employment without altering the at-will employment relationship.  Horton, 360 S.C. at 67, 599 S.E.2d at 460.  The court found the manual contained conspicuous disclaimers, which the employee understood.  Id. at 67, 599 S.E.2d at 460-61.  It further found the disciplinary procedures contained permissive language and did not provide for mandatory progressive discipline.3  Id.
 at 67, 599 S.E.2d at 461.
Unlike the manual in Conner, Qualserves employee manual contained no mandatory or promissory language in the disciplinary policy.  To the contrary, the disciplinary policy clearly contains disclaimers and is couched in permissive language, as was the manual in Horton.  This language clearly notified the employee that the disciplinary provisions did not create a mandatory progressive discipline policy.  Rather the disciplinary provisions only created a scheme of discretionary discipline available to the company.  
Furthermore, Youngbloods own testimony demonstrates his understanding that the disciplinary policy allowed Qualserve the discretion to terminate or discipline its at-will employees:

Q: So the company retained the discretion to discipline or terminate in its own discretion, is that correct?
A: Say that again.
Q: The company retained the right to terminate or discipline employees in its own discretion?
A: Through that book [the employee manual], yes, they did.

Accordingly, we hold no reasonable jury could find the disciplinary policy created a promise, an expectation and a benefit that would alter Youngboods at-will employment.  
Youngblood also asserts other sections of the employee manual are replete with mandatory and representative language.  He lists 34 page numbers that he asserts contain mandatory language.  However, he fails to argue how any of these provisions contain promissory language that would alter the at-will nature of his employment.  
Youngblood next argues a memorandum from Human Resources Director Jennifer Gutierrez reinforced his interpretation of the employee manual that the progressive discipline policy was mandatory.  In this memorandum, Gutierrez instructed:

In order to ensure we consistently apply corporate policies and procedures, and comply with all federal and state legal requirements I will need to be notified of all situations which may ultimately require termination prior to any actual terminations take place.  If this is an employee whom you feel is not contributing to your team, proper steps must be taken in advance in order to protect yourself and the company.  Under no circumstances should an employee be terminated on the spot with out any prior discussions with myself.  You should always allow a cooling off period to ensure proper handling of an issue.  

Youngblood acknowledged that this memorandum was not disseminated to rank-and-file employees but only to supervisors.  He also admitted that its purpose was for protecting the company rather than giving legal rights to the employees.  We find nothing in the memorandum could be interpreted as a promise, an expectation and a benefit that would alter the at-will nature of Youngbloods employment.  The memorandum simply directed Youngblood and other supervisors to contact the Human Resources department before terminating an employee.  It in no way limited Qualserves authority to terminate employees.  
Youngblood also argues the oral representations of Melanie Mead, a member of Qualserves human resources staff, created sufficient mandatory and promissory language to alter his at-will employment status to a contractual relationship.  Youngblood alleges Meads oral representations contained promises of a progressive disciplinary policy and Qualserve failed to provide him the required warnings before terminating his employment.  Youngblood testified that when Mead distributed the employee manuals, she explained the disciplinary policy to him.  He acknowledged that her explanation was reflected in the employee manual.  Youngblood also testified that as a supervisor, he followed the progressive discipline guidelines at Meads instruction.  He stated she told him to follow the guidelines to help the company as far as legal suits and instructed him to take no action against employees without consulting her.
Even when viewing Youngbloods testimony in the light most favorable to him, we find it does not create a genuine issue of material fact as to whether his status as an at-will employee was altered.  He admitted Meads explanations were reflected in the employee manual, which as stated above, contained clear disclaimers and was couched in permissive language.  He did not testify that Mead instructed him to ignore those disclaimers.  Youngblood stated that as Mead explained to him, the disclaimers were in effect to allow for immediate termination of employees who committed serious violations of company policy, such as carrying a weapon on the job site or selling drugs on the job site.  He claimed the disclaimers should not apply to him as a 21 year employee thats done an outstanding job.  However, he subsequently acknowledged that the disclaimer applied to all employees.  
In addition, the disclaimer on page one of the employee manual establishes that an employee cannot rely on any type of oral representation received from a supervisor, corporate officer, or other agent of the corporation.  Youngblood acknowledged the disclaimer contained this language.  By the terms of the employee manual, Youngblood was warned against relying on conversations he had with Mead that purported to alter his at-will status.  Therefore, the oral representations of Mead do not create a material issue of fact to be resolved by the jury.  
Finally, Youngblood refers to the handbooks problem resolution plan.  Although in his brief he claims the plan was not made available to him, he admitted in his deposition that he never pursued the problem resolution plan.  Accordingly, we find Youngblood cannot rely on this provision in his action for breach of contract.  
Youngblood also asserts his termination breached the implied covenant of good faith and fair dealing.  As we find Youngblood has failed to establish the existence of a contract of employment altering his at-will status, his claim for breach of the implied covenant of good faith and fair dealing must also fail.  See Keiger v. Citgo, Coastal Petroleum, 326 S.C. 369, 374, 482 S.E.2d 792, 794 (Ct. App. 1997) (finding where plaintiff failed to allege that her at-will employment status was altered by a handbook or other agreement, her claim for breach of the implied covenant of good faith and fair dealing must fail).  
CONCLUSION
For the foregoing reasons, the circuit courts grant of summary judgment is hereby
AFFIRMED.  
GOOLSBY, HUFF, and STILWELL,
JJ., concur.    

1 We decide this case without oral argument pursuant to Rule 215, SCACR.
2 Qualserve Corporation was formerly known as Food Service Supplies, Inc. and is referred to by that name throughout the employee manual.
3 The supreme court listed as examples of the permissive language used:  

(1) the disciplinary procedure is to be viewed as the guiding policy insofar as taking disciplinary action . . .; (2) supervisors are not required to go through the entire three steps involved in the disciplinary procedure; (3) [d]iscipline may begin at any step in the procedure depending on the seriousness of the offense committed; and (4) supervisor may repeat any of the first two steps of this procedure when he feels it is necessary, so long as the discipline is commensurate with the offense committed.

Horton, 360 S.C. at 67 n.7, 599 S.E.2d at 461 n.7 (emphasis in Horton opinion).