611 S.E.2d 905

**Evelyn H. CONNER, Appellant,**

v.

**CITY OF FOREST ACRES, Respondent.**

**No. 25961.**

Supreme Court of South Carolina.

Heard Feb. 1, 2005.

Decided April 4, 2005.

Rehearing Denied May 4, 2005.

---

462

464

Howard A. Hammer, of Hammer, Hammer & Potterfield, of Columbia; and Scott Elliott, of Elliott & Elliott, PA, of Columbia, for Appellant.

Kathryn Thomas and Derwood L. Aydlette, III, both of Gignilliat, Savitz & Bettis, L.L.P., of Columbia, for Respondent.

Justice BURNETT.

Evelyn H. Conner (Employee) appeals a jury verdict in favor of the City of Forest Acres (City) in this wrongful discharge action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Employee brought this wrongful discharge action, grounded in breach of contract, in what is commonly known as a

"employee handbook claim," against City in 1994. We reversed a grant of summary judgment to City and remanded the case for trial. *Conner v. City of Forest Acres,* 348 S.C. 454, 560 S.E.2d 606 (2002) (affirming in part and reversing in part the unpublished opinion of the Court of Appeals).

Employee was a police dispatcher and office worker in City's police department for nine years. From November 1992 to June 1993, six written reprimands were issued to Employee for violating the dress code, tardiness, performing poor work, leaving work without permission, and using abusive language.

In July 1993, Employee was evaluated as unsatisfactory and placed on a ninety-day probation. She received written reprimands twice in August 1993 and her October 1993 evaluation reflected only slight improvement. Police Chief J.C. Rowe notified Employee by letter dated October 7, 1993, that she was terminated from her job.

Various witnesses for both parties, including Chief Rowe, testified that until her last year or so in the job, Employee was a competent, motivated employee who excelled as a dispatcher—"among the best," "fantastic," "consistent and effective," and "top of the line." Witnesses presented by Employee testified they had a good working relationship with her in 1992–93, although some were patrol officers who had limited contact with office staff. Employee, then age 50, admitted she made some mistakes and sometimes even described herself to other staff members as a "b——." But she denied most of the allegations of wrongdoing as well as City's effort to portray her as a troublemaker who enjoyed disrupting the office staff.

In contrast, witnesses presented by City, most of whom worked in police and municipal court offices, testified Employee's attitude, behavior, and work habits deteriorated severely in 1992–93. Employee belittled or berated co-workers for no reason, took excessive smoking and bathroom breaks, purposely misplaced or disorganized facsimile messages and arrest paperwork, showed disrespect toward police supervisors in the presence of private citizens, ignored the requests of disliked co-workers, used excessive profanity, and generally refused to work cooperatively with other office staff.

The jury rendered a verdict for City at the conclusion of a four-day trial. This appeal was certified for review from the Court of Appeals pursuant to Rule 204(b), SCACR.

## STANDARD OF REVIEW

The admission or exclusion of evidence is within the sound discretion of the trial court and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Pike v. S.C. Dept. of Transp.*, 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000); *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support. *Carlyle v. Tuomey Hosp.*, 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991); *Fontaine v. Peitz*, 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987). To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, *i.e.*, there is a reasonable probability the jury's verdict was influenced by the wrongly admitted or excluded evidence. *Hanahan v. Simpson*, 326 S.C. 140, 156, 485 S.E.2d 903, 911 (1997); *Timmons v. S.C. Tricentennial Commn.*, 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970); *Powers v. Temple*, 250 S.C. 149, 160, 156 S.E.2d 759, 764 (1967).

## ISSUE

Did the trial court err by prohibiting Employee from introducing evidence about the grievance process, which occurred after Employee's initial termination date, and in instructing the jury to disregard all such evidence?

## DISCUSSION

Employee contends the trial court committed reversible error by refusing to allow Employee to introduce evidence about events which occurred after Employee's initial termination on October 7, 1993, and in instructing the jury to disregard subsequent events. Employee argues that evidence of the disciplinary process followed in Employee's case, the vote and recommendation of the grievance committee which heard her case, and the actions of city council which reviewed

her case were admissible. Such evidence was necessary to establish the existence of a contract and lack of the evidence allowed the jury to draw an inference that the procedure was not binding and thus no contract existed. Employee asserts the evidence also was admissible on the issue of whether City acted in good faith and had a sufficient and reasonable basis to terminate Employee. We agree in part.

City moved in limine to prohibit admission of any evidence of events occurring after October 7, including the actions of the grievance committee and city council. City argued that Employee in her complaint had not alleged City had failed to follow the grievance procedure. City asserted it had fully complied with the County and Municipal Employees Grievance Procedure Act,[1] which City contended provides for nothing more than a review of a decision already made and does not limit City's power to terminate at-will employees.

The trial court ruled this Court in *Conner*, 348 S.C. 454, 560 S.E.2d 606, had conclusively established October 7 as Employee's effective, final termination date. Therefore, Employee would not be allowed to introduce evidence of grievance proceedings occurring after that date because such events were irrelevant and likely to cause unfair prejudice to City or confuse the jury. *See* Rules 401–403, SCRE. The trial court ruled Employee would be required to prove her case—*i.e.,* the existence of a contract which modified her at-will employment status by virtue of mandatory language in the handbook and, if a contract existed, the lack of a reasonable, good-faith belief that City had sufficient cause to terminate her—based solely on evidence of events occurring on or before October 7.

The trial court erred in interpreting *Conner* to effectively establish October 7, which was mentioned in the recitation of the facts, as the final termination date. We further conclude the trial court erred in relying in its ruling on section

---

1. S.C.Code Ann. §§ 8–17–110 to –160 (1996 & Supp.2004). The Act allows a county or municipality to adopt a plan for the resolution of employee grievances. The employee may submit her grievance to a committee, which conducts a hearing and has the authority to request pertinent documents and witnesses. The committee must report its findings to the individual or body vested with employment and discharge authority, which approves or rejects the committee's decision without further hearing.

15-2 of City's municipal code, which states the police chief "shall have complete authority to appoint, suspend and remove all police personnel and employees of the police department." The disciplinary and grievance policies contained within the various handbooks, combined with the particular facts of this case revealing City followed those policies, demonstrate city council made the final decision to terminate Employee when it voted to reject the committee's recommendation and uphold the police chief's decision.

■ We disagree with City that the ordinance somehow supercedes established City policies and practices by vesting sole and final termination authority in the police chief. "However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention." *Kiriakides v. United Artist Commun., Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994).

The entire grievance process would be a meaningless exercise in futility if we were to adopt City's interpretation of the ordinance. Instead, we interpret the ordinance to mean simply the police chief has the final termination authority within the department, subject to established grievance policies and review as set forth in City's personnel manuals and the Grievance Procedure Act.[2]

City presented as evidence the written disciplinary and grievance procedures contained in City's personnel manuals

2. The Grievance Procedure Act indicates a supervisor's initial termination of a government employee entitled to a grievance process is not the final decision. The Act provides that the "committee shall ... make its findings and decision and report the findings and decision to the individual or body vested with employment and discharge authority. If the individual or body vested with employment and discharge authority approves, the decision of the grievance committee is final.... If, however, the individual or body vested with the employment and discharge authority rejects the decision of the committee, it shall make its own decision without further hearing, and that decision is final...." S.C.Code Ann. § 8–17–140 (Supp.2004). Therefore, the police chief in this case did not have the sole and final authority to terminate Employee, who would have been reinstated if city council had approved the grievance committee's decision.

issued in 1987 and 1993 and in the police department's personnel manual. The manuals were discussed at length in general terms by City's witnesses, who also emphasized language in the manuals which disclaimed any contract of employment, as well as statements signed by Employee acknowledging the manuals were not contracts of employment. Thus, City repeatedly presented evidence the handbook did not modify Employee's at-will status.

The trial court barred evidence City actually followed its handbook policies in Employee's case, *i.e.*, that a grievance committee heard the matter, the committee voted 2–1 to reinstate Employee, and city council voted to reject the grievance committee's recommendation and uphold the termination. Specifically, the trial court excluded testimony from W.D. Morris, chairman of the grievance committee appointed to hear Employee's case, about the hearing. The trial court also excluded testimony from Ron Garbinsky, city administrator, about the grievance hearing or city council's actions. Employee testified she filed a grievance and a hearing was held, but the trial court excluded further testimony about the hearing.

Despite the trial court's rulings, the jury heard Employee testify she filed a grievance and a grievance hearing was held. Employee's vocational rehabilitation expert mentioned Employee's grievance proceeding. The city administrator testified the grievance committee held a hearing and issued a written decision to city council. City's former mayor testified the grievance committee held a hearing, issued a report recommending Employee "shouldn't be fired," and city council voted on the report.

In keeping with its evidentiary rulings, the trial court instructed the jury

I want you to remember one thing particularly in the course of your deliberations. The City terminated [Employee] on October the 7th, 1993. October the 7th, 1993. You are not to consider anything beyond that date. There's been some evidence or some discussion in this case about a grievance procedure and a procedure that's outlined in the manual and a Grievance Committee which may have acted after October the 7th. You're not to concern yourselves with that. The law says that you must judge the City's actions through

Chief Rowe as of October the 7th. In effect, in effect, you are now the Grievance Committee and you are the judge of the City's actions.

We analyze this case in light of the presumption the jury followed the trial courts instructions to ignore any evidence it heard about post-October 7 events. *See Buff v. S.C. Dept. of Transp.*, 342 S.C. 416, 426 n. 3, 537 S.E.2d 279, 284 n. 3 (2000) ("Juries are presumed and bound to follow the instructions of the trial judge.") (Pleicones, J., dissenting); *Kennedy v. Kennedy*, 86 S.C. 483, 68 S.E. 664 (1910) (appellate court will presume the jury heeded the admonition of the trial court regarding the effect or consideration of certain evidence).

■ South Carolina recognizes the doctrine of at-will employment. This doctrine provides that a contract for employment may be immediately terminated by either employer or employee when unsupported by consideration other than the employer's duty to provide compensation in exchange for the employee's duty to perform a service or obligation. Such a termination may occur at any time and for any reason or no reason at all, subject to certain limited exceptions to the at-will employment doctrine and subject to certain prohibitions against illegal discrimination which are not at issue in this case. *E.g. Horton v. Darby Elec. Co.*, 360 S.C. 58, 66–68, 599 S.E.2d 456, 460–61 (2004); *Conner*, 348 S.C. at 463–64, 560 S.E.2d at 610–11; *Stiles v. American Gen. Life Ins. Co.*, 335 S.C. 222, 224–25, 516 S.E.2d 449, 450 (1999); *Baril v. Aiken Regl. Med. Ctrs.*, 352 S.C. 271, 281–82, 573 S.E.2d 830, 836 (Ct.App.2002); *Burns v. Universal Health Servs., Inc.*, 361 S.C. 221, 233–34, 603 S.E.2d 605, 611–12 (Ct.App.2004) (discussing exceptions).

■ In the exception to the at-will employment doctrine, an employee handbook containing mandatory statements regarding disciplinary and grievance policies may be enforced against an employer as contractual obligations in a wrongful discharge action, despite the presence of a disclaimer in the handbook which asserts it is not intended to create a contract of employment. *Conner*, 348 S.C. at 463–64, 560 S.E.2d at 610–11; *Fleming v. Borden, Inc.*, 316 S.C. 452, 460–63, 450

S.E.2d 589, 594–96 (1994); *Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987).[3]

A jury initially must determine whether an employment contract exists, such that an employee may be fired only for sufficient cause. *Conner,* 348 S.C. at 463–65, 560 S.E.2d at 610–12. "[T]he disclaimer is merely one factor to consider in ascertaining whether the handbook as a whole conveys credible promises that should be enforced. . . . The entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, an expectation, and a benefit." *Fleming,* 316 S.C. at 463, 450 S.E.2d at 596.

Furthermore, it is proper to consider events occurring after an employee's initial termination date and during the grievance process when deciding whether the employee's at-will status was modified by promises contained in a handbook. *See Burns,* 361 S.C. at 236, 603 S.E.2d at 615 (employer's handling of employee's termination, such as issuing a written warning in compliance with its handbook, inferentially demonstrates an employment contract); *O'Brien v. New England Tel. & Tel. Co.,* 422 Mass. 686, 664 N.E.2d 843, 847 (1996) (employer's adherence to grievance procedure in personnel manual was some evidence of existence of contract based on manual's terms); *Warner v. Federal Express Corp.,* 174 F.Supp.2d 215, 228 (D.N.J.2001) (considering whether employer followed established grievance policies after termination of employee in deciding whether employee had established breach of alleged contract); *Stephenson v. State Street Bank & Trust Co.,* 924 F.Supp. 1258, 1280 (D.Mass.1996) (employer's dissemination of an employment manual and its adherence to grievance procedure may constitute evidence of employment contract); *Marrs v. Marriott Corp.,* 830 F.Supp. 274, 280 (D.Md.1992) (considering evidence of parties' compliance with employer's grievance policies in determining whether employer had met contractual obligation allegedly bestowed on em-

---

**3.** The Legislature has enacted S.C.Code Ann. § 41–1–110 (Supp.2004), which took effect March 15, 2004. This statute provides a handbook shall not create an employment contract if it is conspicuously disclaimed. This statute does not apply in Employee's case because it only applies to handbooks issued after June 30, 2004. Employee's handbooks were issued in 1993 and earlier.

ployee by handbook); *Plummer v. Humana of Kansas, Inc.*, 715 F.Supp. 302, 304 (D.Kan.1988) (considering terminated employee's failure to follow grievance procedures in granting summary judgment to employer on handbook-based claim).

If the jury finds the existence of a contract, *i.e.*, that the handbook's mandatory policies and procedures modified the employee's at-will employment status, the jury next must determine whether the contract was breached. When an employment contract only permits termination for cause, the appropriate test on the issue of breach focuses on whether the employer had *"a reasonable good faith belief* that sufficient cause existed for termination." *Conner*, 348 S.C. at 464–65, 560 S.E.2d at 611 (emphasis in original). "[T]he fact finder must not focus on whether the employee actually committed misconduct; instead, the focus must be on whether the employer reasonably determined it had cause to terminate." *Id.* at 464–65, 560 S.E.2d at 611.

The trial court erred in excluding evidence of events occurring after Employee's initial termination date and in instructing the jury to disregard such events. Employee should have been allowed to submit testimony and evidence about the grievance proceeding in her case, in the limited manner further explained below, for two reasons.

First, when the existence of a contract is disputed or its terms are ambiguous, evidence that a party complied with the terms of the alleged contract or acted in conformity therewith is relevant and admissible on the issues of the contract's existence, the meaning of its terms, and whether the contract was breached. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 303, 468 S.E.2d 292, 300 (1996) (contract may be based on verbal understanding to which both parties have mutually assented and upon which both are acting); *Gaskins v. Blue Cross–Blue Shield of S.C.*, 271 S.C. 101, 105, 245 S.E.2d 598, 600 (1978) ("agreement" does not necessarily import any direct or express stipulation, nor is it necessary that it should be in writing; if there is verbal understanding to which both parties have assented, and upon which both are acting, it is an agreement); *Baylor v. Bath*, 189 S.C. 269, 1 S.E.2d 139 (1938) (in lawsuit to enforce specific performance of an alleged oral agreement by elderly bachelor to make a will

in consideration of care and nursing, it was proper to admit evidence that plaintiffs provided care and nursing for three years until bachelors death to prove existence of the contract and performance under its terms). A contract may arise from actual agreement of the parties manifested by words, oral or written, or *by conduct. Prescott v. Farmers Tel. Co-op., Inc.,* 335 S.C. 330, 335, 516 S.E.2d 923, 926 (1999) (emphasis added); *Regions Bank v. Schmauch,* 354 S.C. 648, 660, 582 S.E.2d 432, 439 (Ct.App.2003).

These cases demonstrate courts have applied rudimentary contract principles in handbook cases. Consequently, evidence of whether City adhered to its disciplinary and grievance policies is relevant and admissible on the issues of whether Employee's at-will status had been modified, *i.e.,* the existence of a contract, the meaning of the terms of the contract, and whether either party breached the contract by failing to comply with its terms.

Second, if the jury were to conclude a contract existed, the actions or omissions of City's supervisors and agents during the post-termination grievance proceedings may in some instances be relevant and admissible in determining whether those agents had a reasonable, good faith belief that sufficient cause existed to terminate Employee. Circumstances surrounding a grievance proceeding, or the lack thereof, may reveal whether an employer's reasons for termination were pretextual, did not constitute sufficient cause, or were not done in good faith.

We emphasize that detailed or extensive testimony about grievance proceedings which occurred after the initial termination date ordinarily should not be admitted. The aggrieved employee should have the opportunity to present evidence focusing on the policies and procedures allegedly required by the employee handbook, and whether the employer adhered to those policies and procedures. Such evidence generally should be limited to the fact and duration of a grievance proceeding, a general description of the purpose and substance of the proceeding, and the identity and relationship of participants in the proceeding. Such evidence usually should not include extensive references to or repetition of particular testimony or evidence in the grievance proceeding,

although a party is free to use prior, sworn testimony for impeachment purposes when permissible under evidentiary rules.

■ We further emphasize that the specific recommendation or vote of the grievance committee or the individual or body vested with employment and discharge authority generally is not admissible evidence. We have not found nor has either party cited any controlling authority on this point. We agree with City's contention the vote of a grievance committee or other body vested with employment and discharge authority is akin to the finding of a prior jury or administrative agency, which usually is not admissible at trial. *See Nohrden v. Northeastern R.R. Co.*, 59 S.C. 87, 101, 37 S.E. 228, 237 (1900) ("[I]t would be improper to allow any reference to the action of the former jury calculated to influence the jury then trying the case. Each jury must act upon [its] own responsibility, and according to [its] own view of the testimony submitted to [it], entirely uninfluenced by the action of any other jury."); *Shelton v. Oscar Mayer Foods Corp.*, 325 S.C. 248, 252, 481 S.E.2d 706, 708 (1997) (public policy dictates that findings made by Employment Security Commission on narrow issue of unemployment benefits will not be given collateral estoppel effect in subsequent wrongful termination lawsuit).

Moreover, admission of evidence of a grievance committee's specific recommendation or vote is likely to cause unfair prejudice and confusion, and constitutes an unwarranted intrusion into the jury's role as factfinder. *See* Rule 403, SCRE; *Barfield v. Orange County*, 911 F.2d 644, 651 (11th Cir.1990) (admission of a report by the federal Equal Employment Opportunity Commission on whether reasonable cause exists to believe employment discrimination occurred "may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more"); *Cammer v. Atlantic Coast Line R. Co.*, 214 S.C. 71, 81, 51 S.E.2d 174, 178 (1948) (tasks of resolving contradictions in evidence, determining witnesses credibility, and deciding what testimony to accept when resolving a case are all left to the jury as factfinder; and these

propositions are such elementary observations there is no need to cite supporting authority).

While we find error in the trial court's rulings excluding evidence of the grievance proceeding, as well as the charge requiring the jury to ignore evidence of events occurring after Employee's initial termination date, we find the errors were harmless in this case. An error may be harmless when the aggrieved party fails to establish a claim or defense even when both the admitted and excluded evidence are considered. *See Triple "F," Inc. v. Gerrard,* 298 S.C. 44, 378 S.E.2d 67 (Ct.App.1989) (even if trial court wrongly excluded extension agents testimony university had not endorsed feed program for area dairy farmers, the error was harmless because only testimony on record did not establish feed suppliers claim that feed program marketer had committed fraud).

The jury in this case returned a general verdict. The jury may have determined no employment contract existed due to the handbook or, if there was a contract, City proved it had a reasonable, good faith belief sufficient cause existed to terminate Employee. If we assume, for purposes of argument, Employee would have been able to establish the existence of a contract had she been allowed to present the wrongly excluded evidence, we, nonetheless, are persuaded the jury would not have found in her favor. The record is replete with compelling evidence Employees attitude, behavior, and work habits deteriorated severely in 1992–93. Thus, City had a reasonable, good faith belief sufficient cause existed for Employee's termination. Employee has failed to demonstrate a reasonable probability the jury's verdict was influenced by the lack of the wrongly excluded evidence.

## CONCLUSION

We conclude the trial court erred in excluding evidence of the grievance proceedings which occurred after Employees initial termination date and in instructing the jury to ignore such evidence. Such evidence may be presented in a wrongful discharge action based on mandatory policies and procedures contained in an employee handbook for the reasons and within the limitations we have described. We further conclude Employee has failed to demonstrate a reasonable probability the

jury's verdict was influenced by the lack of the wrongly excluded evidence. Accordingly, the jury's verdict in favor of City is affirmed.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.