PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Diana Blue, Appellant,
 v.
 Coastal Carolina University, Respondent.
 
 
 

Appeal From Horry County
 Edward B. Cottingham, Circuit Court Judge
Unpublished Opinion No. 2007-UP-246
Submitted May 1, 2007  Filed May 22, 2007
AFFIRMED

 
 
 
 William I. Diggs, of Myrtle Beach, for Appellant.
 Amanda A. Bailey and Henrietta U. Golding, both of Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Diana Blue appeals from the trial courts grant of summary judgment in favor of Coastal Carolina University (University) with regard to her claims of breach of employment contract and violation of the Payment of Wages Act.  We affirm.[1]
FACTS
During the calendar year 2004, University solicited applications to fill a position opening designated, Assistant Director of Academic Advising and First Year Programs for Coastal Carolina University.  Blue submitted a letter of application and went through the interview process.  On June 10, 2004, Dr. Ronald R. Ingle, the president of University, sent a letter to Blue stating: 
 

 Upon the recommendation of Dr. Linda Hollandsworth, Director of Advisement and Retention, I am pleased to offer you the position of Assistant Director of First Year Programs and Academic Advising (Student Services Program Coordinator II) at Coastal Carolina University.  The salary for this position will be $32,500 on a twelve-month basis and the appointment will begin on August 2, 2004.  This classified position is subject to state regulations and the University policies as outlined in the Policies and Procedures Manual.
 We feel most fortunate in having an individual with your background and talent joining us at Coastal Carolina University.  
 

Blue accepted the offer of employment and reported for work on August 2, 2004.  On November 5, 2004, Dr. Linda Hollingsworth notified Blue by letter that her employment will terminate during [the] probationary period, effective December 31, 2004.  
 
Asseverating the June 10, 2004 letter established a contract between University and Blue, Blue brought this action alleging a breach of employment contract and seeking the payment of wages called for under the terms of the agreement.  It is undisputed that Blue was paid for her employment, including accrued vacation days, through December 31, 2004 and that she performed no services for University following December 31, 2004.  University filed a motion for summary judgment.  The trial judge granted Universitys motion for summary judgment holding the plain and ordinary meaning of the language used in the letter did not create a contract of employment for a specified term.[2]  The court also found Blue was paid all wages due and granted summary judgment on the issue of wages.  This appeal follows. 
 
STANDARD OF REVIEW
When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court under Rule 56(c), SCRCP.  Helms Realty, Inc. v. Gibson-Wall Co., 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005).  Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP;  Helms Realty, Inc., 363 S.C. at 340, 611 S.E.2d at 488.  To determine whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party.  Law v. S.C. Dept of Corrections, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).  When plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted.  Ellis v. Davidson, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004).
LAW/ANALYSIS
Blue argues the trial court erred in failing to find the June 10, 2004 letter created a contract of employment for a term of one year.  We disagree.
South Carolina has long recognized the doctrine of employment at-will.  Conner v. City of Forest Acres, 363 S.C. 460, 471, 611 S.E.2d 905, 910-11 (2005).  This doctrine provides that a contract for permanent employment is terminable at the pleasure of either party when unsupported by any consideration other than the employers duty to provide compensation in exchange for the employees duty to perform a service or obligation.  See Prescott v. Farmers Tel. Coop., Inc., 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999).  This doctrine allows either party to terminate the employment for any reason or no reason without being subject to a claim for breach of contract.  Horton v. Darby Elec. Co., Inc., 360 S.C. 58, 67, 599 S.E.2d 456, 460 (2004);  Burns v. Universal Health Servs, Inc., 361 S.C 221, 233, 603 S.E.2d 605, 611 (Ct. App. 2004). 
 
An employer and employee may contractually alter an at-will employment relationship, and as a result limit the ability of either party to terminate the employment relationship without incurring liability.  Id. at 233-34, 603 S.E.2 at 612 (citations omitted).  In order to prove the existence of a definite contract of employment, the employee must establish all of the elements of a contract.  Prescott, 335 S.C. at 336, 516 S.E.2d at 926.  An employment contract must contain the following three elements: 1) a specific offer; 2) communication of that offer to the employee; and 3) performance of job duties in reliance on the offer.  Id.
Blue claims the language in the letter, the salary for this position will be $32,500 on a twelve-month basis and the appointment will begin on August 2, 2004, constituted a specific offer of employment for a twelve-month term at the specified salary.  In the alternative, Blue claims the letter creates an ambiguity as to whether University made a specific offer of employment for a twelve-month term, thereby making summary judgment improper.  To be binding, an offer of employment must be definite and be one which is intended of itself to create legal relations on acceptance.  Id. at 336-37, 516 S.E.2d at 926 (citation omitted).  We find Blue has failed to establish Universitys June 10, 2004 letter was a definite offer of employment such as to alter her at-will employment status.  The plain and ordinary meaning of the language used in the letter did not create a term of employment for twelve months; but, rather indicated the salary for the position and the start date of employment.[3]  
Blue further argues the trial court erred in granting summary judgment on her claim for damages under the South Carolina Payment of Wages Act.  We disagree.
Blue contends Universitys withholding of wages due to her pursuant to the terms of her employment contract violates the South Carolina Payment of Wages Act and seeks damages under the Act.  The Payment of Wages Act is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld.  Abraham v. Palmetto Unified Sch. Dist. No. 1, 343 S.C. 36, 50, 538 S.E.2d 656, 664 (Ct. App. 2000).  Because we have already determined Blue was an at-will employee, subject to termination at the pleasure of University, and there is no dispute as to whether Blue is owed wages for her services prior to termination, the trial court properly granted summary judgment on this issue.
 
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] In addition to the plain language used in the letter, the court found a specific reference in the letter, [t]his classified position is subject to state regulations and the University policies as outlined in the Policies and Procedures Manual, further indicated University did not intend to create a contract of employment for a specified term.  State law, regulations, and University policies all provide that a newly hired classified employee must complete a probationary period of twelve months duration for non-instructional personnel.  See, e.g., S.C. Code Ann. § 8-17-310, et. seq., S.C. Code Regs. 19-700 et. seq., Coastal Carolina University Policies and Procedures Manual Sections 1246 et. seq., 1246.02(B), 1227 et seq., 1227.0601, 1247 et. seq., 1247.01(A).  Additionally, the state law, regulations, and University policies all provide that an employee that performs unsatisfactorily during the probationary period must be terminated before becoming a covered employee and may not avail herself to any grievance procedures.  Id.
[3]  Both University and the trial court find further reliance for the at-will status of Blue in the letters reference to Universitys Policies and Procedures Manual.  Because we find the letter is clear and unambiguous we need not look to the Policies and Procedures Manual for further reliance.