665 S.E.2d 222

**Lisa SNAVELY, Appellant,**

v.

**AMISUB OF SOUTH CAROLINA, INC., d/b/a Piedmont Medical Center, Tenet Healthcare Corporation, Tenet South Carolina, Inc., and Eric Eugene Zellner, M.D., Respondents.**

No. 4413.

Court of Appeals of South Carolina.

Submitted May 1, 2008.

Decided June 12, 2008.

Rehearing Denied Aug. 25, 2008.

388

Nekki Shutt and Mary Dameron Milliken, both of Columbia, for Appellant.

William B. Darwin, of Spartanburg, H. Spencer King and Jason M. Imhoff, of Spartanburg, for Respondents.

THOMAS, J.

In this action for breach of patient-physician confidentiality, Lisa Snavely appeals the trial court's grant of Piedmont Medical Center's (Piedmont) motion for summary judgment. We affirm.[1]

## FACTS

On January 20, 2003, Carol Brooks, Snavely's sister-in-law, drove Snavely to the emergency room of Piedmont because Snavely was complaining of weakness, jaundice, and abdominal pain.[2] Per Snavely's request, Mrs. Brooks accompanied her to a private examination room. Dr. Zellner, an emergency room physician working at Piedmont, examined Snavely in Mrs. Brooks' presence and questioned Snavely regarding her symptoms. After completing the examination and reviewing Snavely's medical history, Dr. Zellner informed Snavely "she had likely contracted some form of hepatitis." To confirm his diagnosis, Dr. Zellner ordered Snavely undergo "blood work and an ultrasound." Shortly thereafter, Snavely's brother, James Brooks, arrived at Piedmont and joined Snavely in the examination room[3] where Mrs. Brooks informed him of Dr. Zellner's preliminary diagnosis.

After obtaining the results of Snavely's blood tests, Dr. Zellner returned to the examination room and confirmed to Mr. and Mrs. Brooks the diagnosis of hepatitis. Dr. Zellner also indicated he would refer Snavely to a specialist to determine the type of hepatitis she had contracted. The next day, the Brookses accompanied Snavely to the office of Dr. Debra Gazzuolo. After completing a physical examination and reviewing Snavely's test results, Dr. Gazzuolo informed Snavely she contracted Hepatitis B. Dr. Gazzuolo provided Snavely information about Hepatitis B, including a pamphlet explain-

---

1. We decide this case, without oral argument pursuant to Rule 215, SCACR.

2. At the time of the incident, Snavely resided with her brother, James Brooks (Mr. Brooks), and his wife, Carol Brooks (Mrs. Brooks).

3. The record contains no evidence suggesting Dr. Zellner, or anyone else connected with Snavely, disclosed her condition outside the examination room.

ing the nature of the disease and methods to avoid transmitting it to others. Snavely then shared this diagnosis with the Brookses, and allowed them to review the information Dr. Gazzuolo provided. Subsequently, either Mr. or Mrs. Brooks disclosed Snavely's condition to her employer, a local restaurant, and she was fired.[4]

Following her termination, Snavely filed an action against Piedmont and Dr. Zellner for breach of patient-physician confidentiality. Specifically, Snavely alleged Dr. Zellner unlawfully disclosed her medical condition to the Brookses, and Piedmont was responsible for any unlawful act of Dr. Zellner. In response, Piedmont filed a motion for summary judgment asserting Snavely consented to the disclosure of her condition by allowing the Brookses to remain in the examination room at the time Dr. Zellner delivered his diagnosis. At the motion for summary judgment hearing, the trial court ruled in favor of Piedmont finding:

> [Snavely] permitted Mrs. Brooks to remain in the examination room while Dr. Zellner performed his examination, and when he advised [Snavely] of his diagnosis. By allowing her sister-in-law to remain in the room throughout Dr. Zellner's examination, [Snavely] at least tacitly consented to disclosure of her medical conditions to her sister-in-law.

> [Snavely] then allowed her brother and sister-in-law to accompany her to Dr. Gazzuolo's office the following day and after seeing the doctor, confirmed to the Brooks her specific diagnosis of Hepatitis B. [Snavely] also shared a pamphlet with her brother and sister-in-law that discussed the disease and ways to prevent spreading it. [Snavely] made no attempt to conceal her medical condition; rather, she involved her brother and sister-in-law at each stage. Thus, she cannot complain that any negligence, assuming there was any, of Dr. Zellner caused her injury.

Snavely's Rule 59(e), SCRCP, motion for reconsideration was denied. Shortly thereafter, Dr. Zellner filed a motion to dismiss based upon the trial court's grant of summary judgment in favor of Piedmont. The trial court granted Dr.

---

4. It appears there was a falling out between Snavely and the Brookses after which Mrs. Brooks allegedly called Snavely's employer and disclosed Snavely's condition.

Zellner's motion, concluding "the issue of negligence was held to be solely that of [Snavely] and no one else. Moreover, medical confidences were waived by consenting to the inclusion of family members in medical examination, diagnosis, and treatment." The trial court further found the collateral estoppel doctrine barred Snavely from litigating her claims against Dr. Zellner. In response to the trial court's order of dismissal, Snavely filed another Rule 59(e) motion, which was denied. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Hurst v. East Coast Hockey League, Inc.*, 371 S.C. 33, 36, 637 S.E.2d 560, 561 (2006). On appeal from a grant of summary judgment, the appellate court applies the same standard governing the trial court. *Id.* The trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003) (quoting Rule 56(c), SCRCP). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Department of Corrections*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

## LAW/ANALYSIS

### I. Summary Judgment

Snavely contends the trial court erred in granting Piedmont's motion for summary judgment based upon: (1) Snave-

ly's lack of consent to the disclosure of her medical condition; (2) Piedmont's contributory negligence; (3) the contradicted findings of fact relied upon by the trial court; (4) invasion of privacy; and (5) the doctrine of ostensible agency. We disagree.

## A. Snavely's Consent to Disclosure

██ Snavely contends the trial court erred in granting Piedmont's motion for summary judgment because she did not consent to the disclosure of her medical condition. We disagree.

 While South Carolina does not recognize physician-patient testimonial privilege,[5] the law does recognize an action against a physician for the disclosure of confidential information, *unless* the disclosure is compelled by law or consented to by the patient. *McCormick v. England,* 328 S.C. 627, 635–40, 494 S.E.2d 431, 435–37 (Ct.App.1997); *see also Aakjer v. Spagnoli,* 291 S.C. 165, 173, 352 S.E.2d 503, 508 (Ct.App.1987) ("There is no physician-patient privilege in South Carolina.").

In the present case, Snavely implicitly consented to the disclosure of her medical condition by involving the Brookses at every stage of her medical treatment. By her own admission, Snavely "chose to take [Mrs. Brooks] back" to the

---

5. At common law, neither the patient nor the physician has the privilege to refuse to disclose in court a communication of one to the other, nor does either have a privilege that the communication not be disclosed to a third person. 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* §§ 148, 169 (1981). Although several states have statutorily created a "physician-patient testimonial privilege," South Carolina has not enacted a similar statute and does not recognize the physician-patient privilege. *See Peagler v. Atlantic Coast Line R.R. Co.,* 232 S.C. 274, 282–83, 101 S.E.2d 821, 825 (1958) (noting statutes have been enacted in most states making communications between a physician and patient privileged from compulsory disclosure, but there is no such statute in South Carolina). However, the absence of a testimonial privilege barring certain in-court disclosures is not determinative of our issue because this evidentiary privilege is discernible from a duty of confidentiality. As noted by our Supreme Court in *S.C. State Board of Medical Examiners v. Hedgepath,* 325 S.C. 166, 169, 480 S.E.2d 724, 726 (1997): "The terms 'privilege' and 'confidences' are not synonymous, and a professional's duty to maintain his client's confidences is independent of the issue whether he can be legally compelled to reveal some or all of those confidences, that is, whether those communications are privileged."

examination room and did not ask her to leave during Dr. Zellner's examination. Specifically, Snavely testified as follows:

Q: Okay. And you chose to take [Mrs. Brooks] back with you?

A: Yes.

Q: Okay. That was your decision?

A: Yes.

Q: Okay. And you met Dr. Zellner in an examining room?

A: Yes.

Q: Okay. And what occurred in the examining room?

A: [Dr. Zellner] asked me what my symptoms were. I told him. He told me that he was guessing right now with hepatitis, but not sure which one and that he would send me for blood work and an ultrasound.

Subsequently, Snavely permitted the Brookses to accompany her to Dr. Gazzuolo's office where her diagnosis of Hepatitis B was confirmed. Additionally, Snavely shared a pamphlet with the Brookses discussing the disease and preventive treatments. Accordingly, the trial court did not err in granting summary based upon the finding Snavely "at least tacitly consented" to the disclosure of her medical condition.

## B. Contributory Negligence

 Snavely contends the trial court erred in granting Piedmont's motion for summary judgment by failing to find Piedmont contributorily negligent. We disagree.

 In order to establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000). "However, under South Carolina's comparative negligence doctrine, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant." *Id.* at 422, 529 S.E.2d at 712–13. Generally, a "comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide."

*Id.* at 422, 529 S.E.2d at 713. In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is the plaintiff's negligence exceeded fifty percent. *See Hopson v. Clary,* 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct.App.1996) ("If the evidence as a whole is susceptible to only one reasonable inference, no jury issue is created.").

Here, Snavely fails to prove any negligent act attributable to Dr. Zellner was the proximate cause of the disclosure of her medical condition. Indeed, the record contains no evidence suggesting Dr. Zellner, or anyone else connected with Piedmont, disclosed her condition outside the examination room. Furthermore, Snavely consented to the disclosure of her medical condition by (1) allowing the Brookses to remain in the examination room; (2) involving the Brookses at every stage of her medical treatment; (3) sharing information explaining the disease with the Brookses; and (4) making no attempt to conceal her condition. Consequently, Snavely's negligence in consenting to the disclosure of her medical condition exceeded any negligent act of Dr. Zellner. Thus, the trial court did not err in granting Piedmont summary judgment based upon the doctrine of comparative negligence.

## C. *Uncontradicted v. Contradicted Findings of Fact*

Snavely alleges the trial court erroneously relied upon contradicted facts in granting Piedmont's motion for summary judgment because the record contains factual discrepancies regarding the disclosure of her medical condition. We disagree.

■ Mindful of the summary judgment standard of review, we note the record contains many facts which, even when viewed in the light most favorable to Snavely, clearly show Snavely at least tacitly consented to the disclosure of her medical condition. Snavely involved the Brookses at every stage of her medical treatment and made no attempt to conceal her condition. Consequently, any factual discrepancies which might exist as to Piedmont's contributory negligence cannot alter the inescapable conclusion Snavely's negligence exceeded fifty percent. Under South Carolina

jurisprudence, where evidence of the plaintiff's greater negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury. *See Hopson*, 321 S.C. at 314, 468 S.E.2d at 307. Therefore, we find the trial court did not err in granting summary judgment.

### D. Publication

▮▮▮▮ Lastly, Snavely argues the trial court erred in granting Piedmont summary judgment because the publication of her medical condition to the Brookses amounts to an invasion of privacy. We disagree.

> Invasion of privacy consists of the public disclosure of private facts about the plaintiff, and the gravamen of the tort is *publicity* as opposed to mere publication. The defendant must intentionally reveal facts which are of no legitimate public interest, as there is no right of privacy in public matters. In addition, the disclosure must be such as would be highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities.

*McCormick*, 328 S.C. at 640, 494 S.E.2d at 437–38 (emphasis added).

▮▮▮ "Publicity involves disclosure to the public, not just an individual or a small group." *Id.* at 641, 494 S.E.2d at 438; *see also Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 478–80, 514 S.E.2d 126, 131 (1999) (noting the difference between publicity and publication "is one of a communication that reaches, or is sure to reach, the public"). Thus, while a confidential relationship is breached if unauthorized disclosure is made to an individual not a party to the confidence, the right of privacy[6] is not implicated. *McCormick*, 328 S.C. at 641, 494 S.E.2d at 438.

---

6. As noted by our Supreme Court in *McCormick:*

> Privacy is a right against the public at large. Its doctrinal limits narrowly circumscribe the zone of proscribed conduct in order to prevent hindrance of public expression. In contrast, a right to confidentiality exists against a specific person, who, by virtue of his relationship to the confider, has notice of the duty to preserve the secrecy of clearly identifiable information.

328 S.C. at 641, 494 S.E.2d at 438 (citation omitted).

Based upon the foregoing, we find Snavely cannot sustain her claim against Piedmont for invasion of privacy. Here, the record contains no evidence suggesting Dr. Zellner or anyone else connected with Piedmont disclosed Snavely's condition outside the examination room. Consequently, Snavely cannot satisfy the publicity requirement of her invasion of privacy claim because Snavely cannot prove Piedmont publicized her medical condition to the public at large. Thus, the trial court properly granted Piedmont summary judgment on this ground.

Because we find Dr. Zellner breached no duty, we decline to address Snavely's remaining argument regarding the ostensible agency doctrine established in *Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 533 S.E.2d 312 (2000). *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when disposition of prior issue is dispositive).

## II. Motion to Dismiss

Snavely argues the trial court erred in granting Dr. Zellner's motion to dismiss. Specifically, Snavely argues the trial court erred in finding the collateral estoppel doctrine barred the litigation of her claims against Dr. Zellner. We disagree.

■■■ Initially, we note this issue is not properly before us because Snavely failed to serve her motion to alter or amend judgment pursuant to Rules 5(a) and 59(e), SCRCP. According to Rule 59(e), SCRCP, "a motion to alter or amend judgment shall be served no later than 10 days after receipt of written notice of the entry of the order." Rule 5(a), SCRCP, further provides all "written motions . . . shall be served upon each of the parties of record." In the present case, Dr. Zellner was never served with Snavely's motion to alter or amend judgment.[7] Thus, we decline to rule on this issue.

■■■ Adverting to the merits, this court set forth the modern rule regarding the application of collateral estoppel in *Beall v. Doe*, 281 S.C. 363, 370–71, 315 S.E.2d 186, 190–91

---

7. In her attorney affidavit, Snavely's counsel explained the motion to alter and amend judgment was not properly served on Dr. Zellner due to "inadvertence and excusable mistake."

(Ct.App.1984). In addressing the application of collateral estoppel, the *Beall* court held a party precluded from relitigating an issue with an opposing party is also precluded from relitigating the same issue with a different party unless the precluded party lacked full and fair opportunity to litigate the issue in the first action. *Id.* While the traditional use of collateral estoppel required mutuality of parties to bar relitigation, modern courts recognize the mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issues. *Id.* As noted by this court:

> In the abstract, there is no legitimate reason to permit a defendant who has already thoroughly and vigorously litigated an issue and lost the opportunity to relitigate the identical question, already once decided, simply because he now faces a different plaintiff who for due process reasons could not be adversely bound by the prior judgment. The public interest demands an end to the litigation of the same issue. Principles of finality, certainty, and the proper administration of justice suggest that a decision once rendered should stand unless some compelling countervailing consideration necessitates relitigation.

*Id.* at 370, 315 S.E.2d at 190. Thus, the primary concern of our courts in applying collateral estoppel is not whether the parties satisfy the mutuality requirement, but whether a potentially precluded party had a full and fair opportunity to litigate the issues in a prior action. *Id.*

In the present case, the record clearly indicates Snavely had a full and fair opportunity to litigate the issues of consent, waiver, and comparative negligence in her claim against Piedmont. Therefore, non-mutual collateral estoppel was correctly applied, and Snavely was properly barred from relitigating these same issues against Dr. Zellner. Accordingly, the trial court did not err in granting Dr. Zellner's motion to dismiss.

## CONCLUSION

Based on the foregoing, we find the trial court did not err in granting both Piedmont's motion for summary judgment and

Dr. Zellner's motion for dismissal. Accordingly, the decision of the trial court is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.