**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

| | |
|---|---|
| Suresh J. Nandwani; Kamal J. Nandwani; J. Bombay Management, LLC; and J. and V. Management and Consulting, LLC, | Plaintiffs, |
| Of whom Suresh J. Nandwani and Kamal J. Nandwani are the | Appellants, |
| v. | |
| Queens Inn Motel, a South Carolina General Partnership, d/b/a Coral Sea Villas Inc./Bon Villas Inc./Bon Villas; Bon Villas Motel, a South Carolina General Partnership; Harkishin Bhambhani; Manu Manglani; Hiroo Manglani; Ashok Dawani; Bhagu Ahuja; Geeta Navlani; Rita Lilani, and Jitender Navlani; | Defendants. |

Harkishin T. Bhambhani, individually and as partner of Queens Inn Motel, a South Carolina Partnership, d/b/a/ Coral Sea Villas, Inc.; Bon Villa and Bon Villa Motel, a South Carolina General Partnership, d/b/a Coral Sea Villa, a South Carolina General Partnership,

Third-Party Plaintiffs,

Of whom Harkishin T. Bhambhani is the

Respondent,

v.

Suresh J. Nandwani; Kamal J.
Nandwani; JVN Corporation,
J's LLC; J and V Management
and Consulting, LLC; J.
Bombay Management, LLC;
Manu Manglani; Hiroo
Manglani; Ashok Dawani,
Suresh J. Nandwani; Kamal J.
Nandwani; Bhagu Ahuja; Geeta
Navlani; Rita Lilani; and
Jitender Navlani; individually
and as partners of Queens Inn
Motel, a South Carolina
General Partnership, d/b/a
Coral Sea Villas, Inc., Bon
Villa; Bon Villa Motel, a South
Carolina General Partnership,
d/b/a Coral Sea Villas, Inc.;
Bon Villa; and Coral Sea Villa,
a South Carolina General
Partnership,                                    Third-Party Defendants.

_____

Appeal From Horry County
Gene M. Connell, Jr., Special Referee

_____

Unpublished Opinion No. 2012-UP-385
Heard December 6, 2011 – Filed June 20, 2012

_____

**AFFIRMED AS MODIFIED**

_____

Dan V. Butler and Henrietta U. Golding, both of
Myrtle Beach, for Appellants.

J. Jackson Thomas, of Myrtle Beach, for Respondent.

**PER CURIAM:** Suresh (Sammy) and Kamal (Kenny) Nandwani (collectively Appellants) appeal several issues surrounding the special referee's determination regarding (1) the validity and enforceability of four promissory notes, (2) Harkishin Bhambhani's (Respondent) right to pursue claims arising from prior litigation, and (3) Appellants' breach of fiduciary duty and the liability extending from such breach. We affirm as modified in part.

## FACTS

In 1987, six individuals formed a general partnership (Partnership)[1] for the purpose of purchasing property to operate motels. The partners entered into a signed partnership agreement in 1989.

Partnership's main function was the operation of two hotels, Bon Villa and Queens Inn Motel. At formation, Partnership held an interest in several real properties: (1) a leasehold interest in lots 3 and 4, Block 15, Hotel Section of Myrtle Beach, where Bona Villa was located; (2) a leasehold interest in lots 5 and 6, Block 2, Hotel Section of Myrtle Beach, where Queens Inn Motel was located; and (3) a fee simple interest in lot 9, Block 19, Hotel Section of Myrtle Beach, which was used as a parking lot for Bon Villa. Currently, Partnership's assets include (1) a fee title to lot 9, Block 19, Hotel Section and (2) a leasehold interest in lots 3 and 4, Block 15, Hotel Section.

---

[1] Partnership has been called at various times Coral Seas, Bon Villa, and Queens Inn Motel Partnership.

The parties have presented the court with extensive legal arguments and factual information regarding the relationships between the partners and Partnership's prior complex litigation. The parties involved include: (1) Jariam Nandwani (John), an original member of Partnership who died in 1990; (2) Kenny and Sammy, John's sons who operate J's, LLC and JNV, LLC; (3) Chanderlal Navlani, an original member of Partnership who died December 19, 2004, in India, survived by his wife, Geeta, and two children, Kumari Navlani and Jitender Navlani; (4) Respondent, an original member of Partnership; and (5) Ernest Rabon, the accountant for Partnership since 1989.

Partnership had very little structure. The hotel operations were managed by a managing partner, who made both the governance and day-to-day decisions for Partnership. No partnership meetings were held; however, each partner had access to Partnership's books and records maintained by the accountant. Partnership has had three managing partners since its inception: (1) Vishu T. Bhambhani from 1988 to 1991; (2) Respondent from 1991 to August 1996; and (3) Chanderlal Navlani from August 1996 to October 1999, when he left the United States for India. No partner took over as the managing partner following Navlani's departure to India, nor did any partner direct the hotel operations or management of Partnership's real property interest. The current members and their respective interests are as follows: Kenny (8.75%), Sammy (8.75%), Respondent (15%), Jitender Navlani (10%), Geeta Navlani (20%), Rita N. Lilani (10%), Manu and Haroo Manglani (17.5%), Ashok Dawani (5%), and Bhaju Ahuja (5%).[2]

This action was commenced October 13, 2000, by Appellants to collect on two promissory notes. The complaint was twice amended prior to trial, adding two limited liability companies owned by Appellants, along with added claims for dissolution of Partnership and for rent due from Partnership. In response, Respondent, individually and as a partner of Partnership, filed a second amended answer, amended counterclaim, and amended third-party complaint with defenses and claims against Appellants, Partnership, and the

---

[2] The original partners and respective interests were Vishu T. Bhambhani (15%), John (20%), Chanderlal Navalani (25%), Respondent (15%), Ashok Dawani (5%), and Bhagu Ahuja (5%).

individual partners. The action was referred by consent to a master-in-equity August 12, 2002, and later referred to the special referee August 25, 2009.

The special referee issued an order ending the action, dissolving Partnership, and selling Partnership's property. Both Appellants and Respondents filed Rule 52 and Rule 59, SCRCP motions for amendment or alteration to the final order. Motions were heard and the special referee issued two supplemental orders. The final order and supplemental orders made the following rulings: (1) Appellants' claim for collection on the $50,000 Nandwani note was barred by the statute of limitations; (2) Appellants' claim for collection on the $160,000 Nandwani note and mortgage was granted, but in a reduced amount; (3) claims for unpaid rent against Partnership were barred by the statute of limitations; (4) Partnership should be dissolved; (5) Respondent's claim for collection on the $133,000 Navlani Note and mortgage was granted; (6) Respondents claim for collection of $60,000 on an assignment was granted; and (7) Partnership was granted judgment against Appellants for breach of fiduciary duty in the amount of $631,838. This appeal followed and involves four promissory notes issued by Partnership, prior litigation between Appellants and Respondent, and the purchase of lots 3 and 4.

## I.     Promissory Notes

To fund its business ventures, Partnership borrowed money from several partners, who provided promissory notes as a form of guarantee. The notes include two notes belonging to John (Nandwani notes), and two belonging to Navlani (Navlani notes). Both men are now deceased. The special referee considered the validity of these notes and the right of the parties to collect on these notes.

The partnership agreement states:

> The undersigned parties shall contribute in percentage of their ownership above [the percentages listed in footnote 3] in any additional capital that they may deem to be necessary for the operation of the

Partnership. Any such contribution of additional capital will be first agreed upon by majority of the Partners.

Each Partner agrees to make such loans to the PARTNERSHIP in an amount determined by applying his percentage ownership interest in the PARTNERSHIP to the total additional loan required.

Additionally, the partnership agreement states "heirs of a deceased Partner may succeed to the deceased Partner's interest and continue as Partners in the Partnership."

## A.    Nandwani Notes

On December 25, 1987, Partnership executed and delivered a promissory note made payable to Ashok T. Bhambhani for $160,000. The note was secured by a mortgage on Partnership's interest in all of its real property. The note was personally guaranteed by Respondent, John, Navlani, Ashok Dawani, and Bhaug Ahugja. On May 19, 1988, Ashok T. Bhambhani assigned the note and the mortgage to John. In April 1989, John assigned $60,000 of the note to Navlani.

In April of 1989, Partnership executed and delivered a promissory note to John for $50,000. The note was secured by a mortgage and personally guaranteed by Respondent, Navlani, Manu Manglani, and Ashok Dawani. John died in 1990 and was survived by his wife and Appellants.

Appellants discovered the $160,000 note and a copy of the $50,000 note following the probating of John's estate in 1990, which was handled by the New York superior court. John's estate was re-opened by Kenny, as administrator, and the estate assigned both notes to John's wife, Kenny, and Sammy on July 18, 2005. The wife then assigned her interest in the notes to Kenny and Sammy in a subsequent transaction on the same day.

## B.     Navlani Notes

On December 25, 1987, Partnership issued a promissory note for $133,000 to Ashok T. Bhambhani.  The note was secured by a mortgage on Partnership's interest in all real property.  On May 19, 1988, Ashok T. Bhambhani assigned the note and mortgage to Navlani.  In April of 1989, Partnership issued a promissory note for $47,000 to Navlani secured by a mortgage.  The note was guaranteed by five members of Partnership, including Respondent and John.

Navlani died in India on December 19, 2004, and was survived by his wife and two children.  Navlani's will devised his entire estate to his wife and children.  An application for informal probate was filled out on May 22, 2008, in Horry County, but was never filed with the probate court.  Navlani's heirs assigned their interests in both notes to Respondent on December 31, 2004.

## C.     Special Referee's Findings on  the Notes

Both Appellants and Respondent sought a determination from the special referee of their rights to enforce and collect on the notes.  Appellants argued for full payment of both Nandwani notes. Respondent, individually, asserted a right to both Navlani notes and the $60,000 assignment of the $160,000 Nandwani note.

In regards to the Nandwani notes, the validity of the assignment of the notes by the estate to Appellants was not contested by Respondent at trial. Sammy testified he informed Navlani, in his capacity as managing partner, about the two notes. Sammy further stated Navlani told him both notes were valid and payable.  Kenny testified that on June 1, 1999, Partnership made a partial payment on both of the Nandwani notes by Partnership check.  The check was made payable to Kenny in the amount of $6,000.[3]  Respondent

---

[3] The check was signed by Navlani and the subject line of the check stated "principal plus interest 456[,]395-6,000= 450,395 Balance." Appellants presented a handwriting expert who confirmed the check was written by Navlani.

objected to the testimony regarding statements Navlani made to Sammy, on ground that the testimony violated the Dead Man Statute. The special referee did not consider the testimony regarding communication between the two in his decisions.

The special referee determined (1) the collection claims for the $50,000 Nandwani note and the $47,000 Navlani Note were both barred by the statute of limitations and (2) the $160,000 Nandwani note and the $133,000 Navlani note are Partnership debts. In an amended order, the special referee found Respondent was entitled to the $60,000 assignment of the $160,000 Nandwani note.

## II.    Prior Litigation

In 1996, members of Partnership sued Respondent for breaching his fiduciary duties to partners by misappropriating funds and improperly utilizing Partnership assets. The master ruled Partnership was entitled to reimbursement of $447,909 and dismissed the action for breach of fiduciary duty and civil conspiracy with prejudice based on a failure of proof. This court in <u>Navlani v. Bhambhani</u>, Op. No. 2000-UP-384 (Ct. App. filed May 30, 2000), affirmed the master.

In 1999, JVN, Inc. sued Partnership to collect on promissory notes issued by Partnership to JVN. Respondent, as an individual and on behalf of Partnership, filed counterclaims and a third-party complaint alleging mismanagement by Navlani, as managing partner. The master-in-equity found Navlani breached his fiduciary duty as a result of his acts and omissions while serving as managing partner. The master's order incorporated a settlement agreement between Appellants and Respondent for issues arising from the business relationship between JVN, Inc. and Respondent.

The special referee determined matters unknown to Respondent during the previous lawsuits, partnership assets, and ownership interests of individual partners were matters specifically reserved for a latter hearing.

The special referee also found Respondent's allegations against Appellants for breach of fiduciary duty were not barred in this case.

### III.  Purchase of Lots 3 and 4

Partnership held a leasehold interest on lots 3 and 4, on Block 15 of Hotel Section in Myrtle Beach, where it operated Bon Villa. Partnership began leasing the property on September 30, 1988, from Billy and Bonita Smith. In the late 1990s, the property went into receivership because Partnership was not paying the property taxes, as required under the lease agreement.

In 1998, the Smiths offered to sell the lots to Partnership, but Partnership was unable to purchase the property because of financial reasons. The Smiths then offered to sell the lots to Appellants. Sammy testified Navlani was aware of the offer made to Appellants. He also testified no other partner was informed of the offer, including Respondent who resided within minutes of Sammy's home. On June 2, 1999, Appellants, acting on behalf of J's LLC, purchased the fee title to lots 3 and 4 for $800,000. Upon the purchase of the land, J's LLC became the landlord for Partnership, pursuant to Partnership's lease agreement with the Smiths.

In February of 2000, J's LLC commenced an eviction action against Partnership for the failure to pay the 1999 property taxes, pursuant to the leasehold agreement. The eviction notice was mailed by certified mail to Manu Manglani, a general partner of Partnership, at his last known address in New York. A copy of the return receipt was signed and returned by Manglani. At trial, Manglani denied signing the return, but confirmed he owns the apartment located at the address where the letter was mailed and has previously received mail at the address.[4] Additionally, he admitted his tenants have previously forwarded him mail delivered to the apartment.

---

[4] At trial, Manglani denied ever receiving any mail for Partnership purposes. He said the accountant would fax any documents concerning Partnership.

Appellants contend service was also made by posting notice at Bon Villa and through publication in the <u>Myrtle Beach Herald</u> in Horry County.[5]

No one appeared on behalf of Partnership at the eviction hearing, and the magistrate issued a warrant of ejection against Partnership on March 13, 2000. Following the eviction, Appellants demolished Bon Villa. Respondents asserted a claim for breach of fiduciary duty against Appellants for their (1) involvement in the acquisition of the fee title to the real property upon which Partnership assets were situated, (2) ejectment suit against Partnership, (3) demolition of Partnership's building, and (4) self-dealing with regard to the nonpayment of taxes on Partnership's property.

The special referee determined Appellants breached their fiduciary duty. The special referee ordered a judgment in the amount of $631,838, the last recorded value of Bon Villa, be made in favor of Partnership against Appellants for breach of fiduciary duty.[6] This appeal followed.

## LAW/ANALYSIS

### I.    Notes

#### A.    Dead Man's Statute

Appellants maintain the Dead Man's Statute is not applicable because Partnership and Respondent, the parties against whom Navlani's statements were being asserted, were not defending the action as Navalni's "executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee[,] or survivor."  In the alternative, Appellants contend Respondent opened the door to Sammy's testimony about Navalni by not objecting to the admission of other evidence barred by the Dead Man's Statute.  We disagree.

---

[5] The special referee made the factual determination that no evidence showed a notice was placed at Bon Villa.

[6] In the first two orders, the special referee directed lots 3 and 4 be transferred or conveyed to Partnership.  He later vacated that finding on "the basis that not all parties with interest in said lots were made parties to the action."

In reviewing the admission or exclusion of evidence, the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion. Hofer v. St. Clair, 298 S.C. 503, 513, 381 S.E.2d 736, 742 (1989). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." Conner v. City of Forest Acres, 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., there is a reasonable probability the jury's verdict was influenced by the wrongly admitted or excluded evidence." Id.

The South Carolina Dead Man's Statute, section 19-11-20 of the South Carolina Code (1985), provides in pertinent part:

> [N]o party to an action or proceeding, no person who has a legal or equitable interest which may be affected by the event of the action or proceeding, no person who, previous to such examination, has had such an interest, however the same may have been transferred or come to the party to the action or proceeding, and no assignor of anything in controversy in the action shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic as a witness against a party then prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person or as assignee or committee of such insane person or lunatic, when such examination or any judgment or determination in such action or proceeding can in any manner affect the interest of such witness or the interest previously owned or represented by him . . . .

(emphasis added).

The statute "prohibits any interested person from testifying concerning conversations or transactions with the decedent if the testimony could affect his or her interest." Hanahan v. Simpson, 326 S.C. 140, 151, 485 S.E.2d 903, 909 (1997). This statute is viewed as the exception to the general rule on witness competency and has been found to require a restrictive reading on which the party requesting its use bear the burden. Id.

The special referee properly determined Appellants' testimony concerning their conversations with Navlani were not admissible under the Dead Man's Statute. Navlani's heirs were parties to the case and hold a partnership interest in Partnership. As heirs, they have a present and vested interest in the $50,000 Nandwani note and the determination of whether they breached their fiduciary duty to Partnership. In regards to the Respondent, it is well established that an "assignee . . . stands in the shoes of its assignor . . . ." Singletary v. Aetna Cas. & Sur. Co., 316 S.C. 199, 201, 447 S.E.2d 869, 870 (Ct. App. 1994). Thus, it was proper for the special referee to disregard the communications under the Dead Man's Statute.

Additionally, Respondent did not open the door to this testimony by failing to object to other evidence. From a plain reading of the statute, the open door exception is triggered when a party admits evidence first, thereby allowing the subject matter into the trial. Hanahan, 326 S.C. at 151, 485 S.E.2d at 908. However, a party's failure to make a Dead Man's Statute objection to other evidence his opponent admits does not fall within that exception. Accordingly, we affirm the special referee's decision.

## B. Statute of Limitations

Appellants contend the statute of limitations does bar their collection claim to the $50,000 Nandwani note because of partial payment made in June 1999. We disagree.

Generally, an action to enforce the obligation to pay must be commenced within three years. S.C. Code Ann. § 15-3-530 (2005).[7] However, if payment is made towards the note after the applicable limitations has passed, the cause of action to enforce payment on a note begins to accrue again. Wolfe v. Brannon, 211 S.C. 282, 286, 44 S.E.2d 833, 835 (1947). Note 2 of section15-3-530 states "[p]atrial payment on a note within the [three-year] period immediately preceding the bringing of an action therein will remove the bar of the statute." (citing Zaks v. Elliot, 106 F.2d 425, 427 (1939)). A cause of action against the obligor accrues upon demand. Section 36-3-122 of the South Carolina Code (2003)[8].

Appellants presented (1) a copy of the $50,000 note, (2) Navlani's ledger entries, (3) Sammy's testimony of Partnership's partial payment, (4) a copy of a $6,000 check from Partnership's account dated June 2, 1999, and (5) a handwriting expert to testify to Navlani's signature. At trial, Partnership and Respondent's arguments relied heavily on the fact the accounts did not show a debt for the $50,000 note and that Rabon was not aware of the $6,000 payment being made.

The promissory note was signed in April 1989 and the $6,000 check was written on June 1, 1999. The special referee found Rabon's lack of knowledge of the check being written as a significant factor in deciding this issue. Rabon testified he had access to Partnership's bank accounts and tax returns to provide accounting services to Partnership, yet he did not know about the promissory note or the check. Rabon stated he monitored and maintained Partnership's accounts for tax returns based on whichever partner brought the books and records to him. Navlani was the partner providing the records to Rabon during this time period.

---

[7] §15-3-530 was amended in 1988 to reduce the limitations period from six to three years. .

[8] Section 36-3-118 of the South Carolina Code (Supp. 2011) was amended in 2008 to affirmatively state the scope of Article 3 of the commercial code, including the statute of limitations. 2008 South Carolina Laws Act 204 (S.B. 936) Official Comment 1. At the commencement of this action section 15-3-530 provided the statute of limitations for both secured and unsecured notes.

The special referee was presented with contradictory evidence from both parties. Under our scope of review, this court "must affirm the special referee's factual findings, unless there is no evidence that reasonably supports those findings." Roberts v. Gaskins, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997). The special referee found no documented payments were made on the note, as the note did not appear on the accounts as debts or money paid or owed by Partnership, and the accountant was not aware of the debt. Therefore, we affirm, relying on the special referee and his advantage to make credibility determinations of the witnesses before him.

### C. Guarantor Liability

Appellants contend both Nandwani notes contain personal guaranties and the special referee should have addressed these guarantees in the amended order. We agree.

"A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity." AMA Mgmt. Corp. v. Strasburger, 309 S.C. 213, 219, 420 S.E.2d 868, 872 (Ct. App. 1992). "It is a personal obligation running directly from the guarantor to the creditor which is immediately enforceable against the guarantor upon default of the debtor." Id.; see Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Ret. Grp., Inc., 300 S.C. 277, 280, 387 S.E.2d 672, 674 (1989). "Unless the debt instrument or the instrument of guaranty prohibits assignment, an assignment does not release the guarantor, who is discharged only when the underlying debt has been paid or otherwise satisfied in full." AMA Mgmt. Corp., 309 S.C. at 219, 420 S.E.2d at 872.

Because the members of Partnership signed the notes both as members and guarantors, the Nandwani notes include both partnership liability and guarantor liability. The special referee erred in only addressing partnership liability in the amended order. Under a guarantor analysis, the $50,000 Nandwani note is still barred by the statute of limitations; thus any guarantor claims would also be time-barred. In regards to the $160,000 note, which the special referee determined to be properly payable, both Appellants and

Respondent have the right to pursue the claim for payment against the individuals who signed the promissory note as guarantors. Therefore, we modify the referee's order and find the guarantors are liable for the $160,000 note.

### D. Principal Amounts Owed on the Nandwani Notes

Appellants argue the special referee erred in finding the amounts payable on both Nandwani notes. They contend the evidence does not support the finding they are only entitled collect $53,000 on the $160,000 promissory note and nothing on the $50,000 note. We disagree.

"In an action at law, the appellate court will correct any error of law, but it must affirm the special referee's factual findings unless there is no evidence that reasonably supports those findings." Roberts, 327 S.C. at 483, 486 S.E.2d at 773.

The special referee provided a thorough explanation of his ruling in the order. The special referee's determination was based on a careful review of Partnership's records, exhibits, the testimony of Rabon, the record of principal paid on the $160,000 Nandwani note, a $9,000 loan made to the Partnership by Appellants, and the decision the $50,000 note was barred by the statute of limitations, as discussed in the previous section.

Two significant decisions went into the special referee's determination of the amount payable on the $160,000 note. The first is a $25,000 payment on September 9, 1993, to Kenny. The special referee's order determining the reduction of the $25,000 was based on the evidence presented by defendant's exhibits 50, 52, and 60. The record contains only exhibit 60, which shows a payment of $25,000 for "note pay." No evidence in the record contradicts the referee's finding that the $25,000 was applied to the outstanding debt for the promissory note, and without the other exhibits, this court may conclude the $25,000 check was for the payment of the $160,000 note. See Rule 210(h), SCACR (stating the appellate court will not consider any fact that does not appear in the record on appeal); see also State v. Carlson, 363 S.C.

586, 608, 611 S.E.2d 283, 294 (Ct. App. 2005) (stating the appellant bears the burden of presenting a sufficient record to allow review).

The second decision by the special referee is the application of the $6,000 check to the payment of the outstanding debt on the $160,000 note. While the accountant had no accounting record of the check, the check was written and credit of payment should be credited towards the payment of Partnership's outstanding debt. Because the check was not traceable to the debt barred by the statute of limitations on the $50,000 note, as discussed previously, the special referee correctly applied the amount paid on the debt to the $160,000 note.

Evidence in the record supports the determination that John did assign $60,000 of the $160,000 note to Navlani's heirs. The exhibits cited in the order for this finding were not included in the record on this appeal. See Rule 210, SCACR (stating the appellate court will not consider any fact which does not appear in the record on appeal); see also Carlson, 363 S.C. at 608, 611 S.E.2d at 294 (stating the appellant bears the burden of presenting a sufficient record to allow review). However, the signed assignment of $60,000 of the $160,000 Nandwani note is in the record and can be relied on by this court. Because evidence supports the assignment from John to Navlani, this increases the principal owed to the Navlani heirs and reduces the amount payable to Appellants. Accordingly, we affirm the special referee's decision on this matter.

### E.    Assignable Rights of the Navlani Notes

Appellants argue the special referee erred in determining the Uniform Commercial Code (UCC) did not apply to the question of whether the Navlani notes were assignable under the probate code. They contend the UCC establishes whether the promissory note is negotiable. They further assert that because the Navlani notes were not properly assigned, the Navlani heirs did not have a transferable interest in the notes at the time the notes were assigned to Respondent. We disagree.

The special referee and Respondent cite section 62-3-101 of the South Carolina Code (2009) for the proposition that real property transfers at death from the decedent directly to his heirs or devisees.  Section 62-3-101 states:

> Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to his heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting the devolution of intestate estates, subject to the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration, particularly the exercise of the powers of the personal representative under §§ 62-3-709, 62-3-710, and 62-3-711, and his personal property devolves, first, to his personal representative, for the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration, particularly the exercise of the powers of the personal representative under §§ 62-3-709, 62-3-710, and 62-3-711, and, at the expiration of three years after the decedent's death, if not yet distributed by the personal representative, his personal property devolves to those persons to whom it is devised by will or who are his heirs in intestacy, or their substitutes, as the case may be, just as with respect to real property.

(emphasis added).  Appellants argue the assignment of the note occurred prior to the expiration of the three-year period for devolving the interest, thus making the notes improperly assigned by Navlani's heirs in their transfer to Respondent.

The special referee also cited section 62-3-101 for the proposition that the notes had devolved to the named heirs because the three-year period had passed by the time this case was before him. A plain reading of the statute does not bear out this portion of the special referee's analysis. The statute contemplates (1) real property passing to heirs at the time of a decedent's death and (2) personal property passing by (a) the opening of an estate or (b) estate property being passed to heirs in the absence of a personal representative's action after the accrual of a three year period. In this case, the determination of whether Navlani's heirs had a right to assign their interest in the notes is dependent on whether the promissory notes, secured by Bon Villa, were real or personal property for the purpose of probate.

Real property is "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land. Real property can be either corporeal (soil and buildings) or incorporeal (easements)." Black's Law Dictionary 1337 (9th ed. 2009). Incorporeal property is an in rem proprietary right that includes encumbrances like leases, mortgages, and servitudes. Id. at 1336. "A mortgagee has both an in personam claim against the mortgagor on the debt or obligation and an in rem action against the security." Ralph E. Boyer, Survey of the Law of Property 513 (3d ed. 1981).

The probate code does not define real property. However, section 12-37-10 of the South Carolina Code (2000) defines real property for the purpose of assessment of property taxes to mean "not only land, city, town and village lots but also all structures and other things therein contained or annexed or attached thereto which pass to the vendee by the conveyance of the land or lot." Furthermore, in section 31-3-20(14) of the South Carolina Code (2007), the phrase real property for the housing authority includes "lands, lands under water, structures and any and all easements, franchises and incorporeal hereditaments and every estate and right therein, legal and equitable, including terms for years and liens by way of judgment, mortgage or otherwise."

Because a mortgage is real property in South Carolina, the Navlani heirs had the right to assign the notes under section 62-3-101 prior to the

estate being probated under the intestacy statute. Therefore, we affirm the special referee's decision to uphold the assignment by the Navlani heirs to Respondent.

## II. Prior Litigation

### A. Res Judicata/Collateral Estoppel

Appellants contend because Respondent could have raised the breach of fiduciary duty claim and issues concerning the eviction of Partnership in the prior suit with JVN, Respondent is barred by res judicata on the breach of fiduciary duty claim and is further barred by collateral estoppel from bringing these issues against Appellants in this lawsuit. We disagree.

Under the doctrine of res judicata, a final judgment on the merits in a prior action will preclude the parties from re-litigating any claims actually litigated or those that might have been litigated in the first action. Hilton Head Ctr. of S.C., Inc. v. Public Serv. Comm'n, 294 S.C. 9, 11, 362 S.E.2d 176,176 (1987). To establish res judicata, three elements must be shown: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. Sealy v. Dodge, 289 S.C. 543, 545, 347 S.E.2d 504, 504 (1986). "Res judicata also bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that is the subject of a prior suit between those parties." Sub-Zero Freezer Co. v. R.J. Clarkson Co., 308 S.C., 188, 190-91, 417 S.E.2d 569, 571 (1992).

In this action, Respondent pled a breach of fiduciary duty against Appellants based on their involvement with the purchase, ownership, and operation of lots 3 and 4 in connection with Appellants' membership in Partnership. Additionally, Respondent pled the damages resulting from such breach to Partnership's assets and ownership of those assets to Partnership and partners, individually. In the prior order from the JVN action, the trial court found "the issues of ownership of the various lots, whether owned or leased, which were partnership assets as of 1996, are specifically not addressed in the Settlement Agreement or this Order." "Neither are the

various partners' equity and percentage of ownership in these lots addressed herein and the same shall be determined at a later [h]earing."

The special referee correctly determined res judicata did not bar Respondent in this action because (1) the trial court's order in the JVN action did not address Partnership property, (2) Appellants' breach of fiduciary duty had not occurred at the time of the counterclaim, and (3) the time for additional pleadings had passed under Rule 15, SCRCP.

The trial court's order in the JVN action provided that a separate hearing would determine issues of ownership of Partnership's assets. The breach of fiduciary duty raised in this appeal is one arising out of the property excluded from the trial court's order and settlement agreement. Additionally, the breach of the fiduciary duty pled in this case involves the eviction of Partnership and the failure of Appellants to notify the other partners under their obligations of good faith and loyalty. Litigation with JVN commenced in 1999, prior to the eviction and ejectment by J's and Appellants. While the parties are comprised of the same individuals, the subject matter before the trial court was a separate and distinct cause of action.

"Under the doctrine of collateral estoppel, also known as issue preclusion, when an issue has been actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action whether on the same or a different claim." Zurcher v. Bilton, 379 S.C. 132, 135, 666 S.E.2d 224, 226 (2008). "While the traditional use of collateral estoppel required mutuality of parties to bar relitigation, modern courts recognize the mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issues." Snavely v. AMISUB of S.C., Inc., 379 S.C. 386, 398, 665 S.E.2d 222, 228 (Ct. App. 2008) (emphasis added) (citing Beall v. Doe, 281 S.C. 363, 370-71, 315 S.E.2d 186, 190-91 (Ct. App. 1984)). "[H]owever, to assert collateral estoppel successfully, the party seeking issue preclusion still must show that the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment." Beall, 281 S.C. at 371, 315 S.E.2d at 191 (emphasis added).

In this case, Respondent did not have a full and fair opportunity to litigate the breach of fiduciary duty within the factual context of evicting Partnership in the prior litigation. A fiduciary duty can be held by more than one person and in more than one circumstance. The fact the issue of a fiduciary duty was litigated previously does not stop another from breaching his or her own fiduciary duty later. Thus, the breach being claimed in this case is a separate issue warranting a separate determination. Therefore, we find the special referee correctly found neither res judicata nor collateral estoppel barred Respondent's claim for breach of fiduciary duty.

### B. Settlement Agreement

Appellants argue the express terms of the settlement agreement bar the claims against them in this case. The record supports the special referee's interpretation and finding that matters regarding partnership assets and ownership interests were "reserved to be determined at a later hearing." Therefore, we affirm the special referee's determination that Appellants' breach of fiduciary duty was not barred by the settlement agreement.

## III. Property

### A. Breach of Fiduciary Duty

Appellants argue the special referee erred in determining they breached their fiduciary duty to Partnership when J's purchased lots 3 and 4. Appellants suggest the evidence in the record does not support a breach of fiduciary duty. We disagree.

"A claim of breach of fiduciary duty is an action at law [,] and the trial judge's findings will be upheld unless without evidentiary support." Jordan v. Holt, 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005). "Partners are fiduciaries [to each other] and their relationship is one of mutual trust and confidence, imposing upon them requirements of loyalty, good faith, and fair dealing." Redwend Ltd. P'ship v. Edwards, 354 S.C. 459, 475, 581 S.E.2d 496, 505 (Ct. App. 2003); accord Few v. Few, 239 S.C. 321, 336, 122 S.E.2d

829, 836 (1961). "A fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another." Ellis v. Davidson, 358 S.C. 509, 519, 595 S.E.2d 817, 822 (Ct. App. 2004); Regions Bank v. Schmauch, 354 S.C. 648, 670, 582 S.E.2d 432, 444 (Ct. App. 2003). "Parties in a fiduciary relationship must fully disclose to each other all known information that is significant and material, and when this duty to disclose is triggered, silence may constitute fraud." Ellie, Inc.v. Miccichi, 358 S.C. 78, 100, 594 S.E.2d 485, 497  (Ct. App. 2004) (quoting Anthony v. Padmar, Inc., 320 S.C. 436, 449, 465 S.E.2d 745, 752 (Ct. App. 1995)).

South Carolina case law recognizes the fiduciary duty owed between partners. Moore v. Moore, 360 S.C. 241, 252, 599 S.E.2d 467, 473 (Ct. App. 2004). The court held in Lawson v. Rogers:

> The law holds each member of a partnership to the highest degree of good faith in his dealings with reference to any matter which concerns the business of the common engagement, and each partner, being the agent of the firm, must be held to the same accountability as other trustees, in all matters which affect the common interest. The relationship of a partnership is fiduciary in character and imposes on the members the obligation of refraining from taking any advantage of one another by the slightest misrepresentation or concealment.

312 S.C. 492, 498-99, 435 S.E.2d 853, 857 (1993); see also Edwards v. Johnson, 90 S.C. 90, 99, 72 S.E. 638, 642 (1911) (stating each member of a partnership is held to the highest degree of good faith in his dealings with reference to any matter concerning the business of the common engagement, and each partner, being an agent of the firm, must be held, during the existence of the relation, to the same accountability as other trustees in all matters affecting the common interest).

Appellants contend they acted within the confines of the law in their purchasing of lots 3 and 4 and did not breach their fiduciary duty to Partnership. Kenny testified Mrs. Smith approached him with the offer to sell the lots only after Partnership refused to purchase the lots. Following the purchase, the Appellants argue they were entitled to evict Partnership under the leasehold agreement and section 27-37-10 of the South Carolina Code (2007).[9] Furthermore, they contend they should not be held liable for the demolition of Bon Villa because proper ejectment occurred.

In this case, Appellants' undisclosed purchase of the property was intimately connected with Partnership's purpose and function. Kenny's testimony that Mrs. Smith contacted him does not lessen his duty Partnership because the line of communication between Kenny and Mrs. Smith existed due to his role in Partnership. Mrs. Smith stated in her deposition that she knew Appellants because of their involvement with the payment of Partnership's taxes in the past. The option to purchase was made through a partner relationship and is statutorily guarded under section 33-41-540 of the South Carolina Code (2006). Furthermore, Appellants were aware Partnership had been interested in purchasing the fee tail previously and owed a duty to inform all of the partners of the opportunity, as provided in the statute. Appellants, as fiduciaries, violated their obligations of mutual loyalty, good faith, and fair dealing. Redwend Ltd. P'ship, 354 S.C. at 475, 581 S.E.2d at 505.

The more troubling breach of fiduciary duty by Appellants is their inaction regarding the notification of the eviction process and the demolition of Bon Villa. Appellants, as members of Partnership, are in a fiduciary relationship requiring they disclose to each partner all information that is significant and material. Ellie Inc., 358 S.C. at 100, 594 S.E.2d at 497. J's does not have this duty, but Appellants are held to a higher standard. As discussed with the notice requirements for the Rule to Show Cause, infra, failure to show proof of delivery is not an automatic failure of service under Rule 4; however, when applied to the duties required of partners, this is a

---

[9] Section 27-37-10 states a tenant may be ejected when "the terms or conditions of the lease have been violated."

substantial breach of a fiduciary duty. Appellants were informed of significant and substantial information affecting the interest of Partnership and failed to act with good faith and loyalty towards the other partners. Strong evidence of Appellants' bad faith is Appellants' decision not to pay the 1999 property taxes or seek payment of taxes by Partnership or its other members.

Appellants' brief argues in great detail that the special referee erred in finding "no evidence [Respondent] acted with unclean hands against [Appellants]," which they asserted as a defense to the breach of fiduciary duty claimed by Respondent. Neither the special referee's finding nor this equitable defense by Appellants affect Appellants' fiduciary duty owed to Partnership. To sustain an equitable defense of unclean hands, there must be (1) inequitable conduct by the plaintiff, (2) related directly to the subject matter of the litigation, which (3) causes prejudice or injury to the defendant. This court's holding in Navlani v. Bhambhani is independent of Appellants' breach of fiduciary duty in this case. Appellants' decisions to purchase lots 3 and 4 and then evict Partnership were not legally connected with Respondent's mismanagement of money or the court ordered repayment of funds to Partnership. Accordingly, evidence supports the special referee's finding that Appellants breached their fiduciary duty toward Partnership and the partners.

### B.      Judgment for $631,838

Appellants argue the special referee erred in finding Partnership is entitled to a judgment of $631,838 for breach of Appellants' fiduciary duty. We disagree.

A party cannot complain about the valuation of an asset by a court when the party fails to present a valuation. S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC, 379 S.C. 645, 672, 667 S.E.2d 7, 22 (Ct. App. 2008). "Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." Whisenant v. James Island Corp., 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981). "While neither the existence,

causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required." Id.

"Ordinarily a property owner, who is familiar with his property and its value, may give his estimate of its value or the damage inflicted upon it even though he is not an expert." Barton v. Superior Motors, Inc., 309 S.C. 491, 494, 424 S.E.2d 524, 526 (Ct. App. 1992); see also Abercrombie v. Abercrombie, 372 S.C. 643, 647, 643 S.E.2d 697, 699 (Ct. App. 2007) (recognizing general rule in South Carolina that a property owner is competent to offer testimony as to the value of his property).

> The fact [the special referee] heard the evidence and was more familiar than we with the evidentiary atmosphere at trial gives [the special referee], we think a better informed view than we have. This is particularly true when the elements of damage are intangibles and the appraisal depends somewhat on the observation of the [witnesses] and evaluation of their testimony.

Jordan, 362 S.C. at 207, 608 S.E.2d at 132.

Testimony in the record supports the special referee's view that Bon Villa was worth $631,838 based on the 1997 federal tax return. Appellants suggest the evidence in the record does not support such a finding on the grounds (1) Partnership did not have a successful business venture with Bon Villa; (2) a portion of Partnership's properties had been condemned by the city of Myrtle Beach; (3) the lease agreement provided the definition of abandonment, which Appellants assert had occurred; and (4) Partnership's assets were valued at $241,254 in 2000, as discussed in a prior opinion by this court.

Appellants reference both the condemnation action and the valuation of property discussed in Navlani v. Bhambhani. Appellants did produce evidence of the condemnation action and provided testimony at the trial of

the condemnation and the state of the property at the time J's evicted Partnership. However, Appellants provided no evidence to support a different fair market value of the property at the time of condemnation or the demolition of Bon Villa. Furthermore, Appellants reference to this court's holding in <u>Navlani v. Bhambhani</u> for the value of the property is misplaced. The $241,250 figure in that case is the value of the disbursements taken by Respondent, not the value of the property. Also, the accounting for the fiduciary breach in that case is not the same because the values of the buildings were not the subject of the assets being discussed by the court. Therefore, we affirm the special referee's determination that Respondent is entitled to a judgment of $631,838, as evidence exists in the record to support his decision.

### C.      Service of Rule to Show Cause for Eviction

Appellants contend evidence fails to support the finding that the partners and Partnership were not properly notified of the eviction of Partnership from lots 3 and 4. Appellants argue they served the eviction action on Partnership by three methods, which demonstrates adequate notification was given and the requirements for the eviction's Rule to Show Cause were met. The special referee found no evidence to support the Rule to Show Cause was affixed to the Bon Villa. Therefore, the special referee determined by the preponderance of the evidence, the ruling on the Appellants' breach of fiduciary duty could not be changed. This court need not reach this issue because the determination does not affect whether Appellants are liable for breach of fiduciary duty. <u>See</u> <u>Futch v. McAllister Towing of Georgetown, Inc.</u>, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

### CONCLUSION

Based on all of the foregoing, the order of the special referee is

**AFFIRMED AS MODIFIED.**

**FEW, C.J., and THOMAS and KONDUROS, J.J., concur.**